JOHNSTON, Admr.

v.

JOHNSTON et al█

 2002-Ohio-4254.]

Court of Common Pleas of Ohio,
Lake County.

No. 00 CV 001494.

Decided March 13, 2002.

190

Clifford C. Masch and Robert D. Warner, for plaintiff.

Joseph R. Tira, for defendant Daniel Johnston.

J. Stephen Teetor and Samuel H. Simon, for defendant G.R. Osterland Co.

Michael A. Paglia, for defendant Allstate Insurance Company.

Paul H. Eklund, for defendant Cincinnati Insurance Company.

Daniel Richards and Randy L. Taylor, for defendant Westfield Insurance Company.

EUGENE A. LUCCI, Judge.

{¶ 1} This matter came on to be heard on defendant Allstate Insurance Company's ("Allstate") motion for summary judgment.

## PROCEDURAL HISTORY

{¶ 2} Allstate's motion for summary judgment was served on all parties as Exhibit B attached to Allstate's motion for leave to file motion for summary judgment instanter, filed January 18, 2002. By order filed January 24, 2002, the court granted Allstate's motion for leave, and fixed the date for a non-oral, non-appearing hearing on Allstate's motion for summary judgment as February 11, 2002. Thereafter, Allstate filed a motion for an order instructing the Lake County Clerk of Courts to remove Allstate's motion for summary judgment as Exhibit B from its motion for leave to file and to file the motion for summary judgment. On February 19, 2002, the court granted the motion and ordered the clerk of courts to remove Exhibit B and file it.

{¶ 3} No opposition to Allstate's motion for summary judgment has been filed; however, the court is mindful of the arguments raised by the parties in their previous filings regarding the issues raised by the Allstate insurance policy.

## FACTUAL BACKGROUND

{¶ 4} Plaintiff Kathleen Johnston, in her individual capacity and as the administrator of her son's estate, filed the complaint in this action on September 20, 2000. Plaintiff's complaint alleges that on August 31, 1999, her 17–year–old son, David Johnston, was injured and killed in a single-vehicle motorcycle accident as a proximate result of the negligence of defendants G.R. Osterland Co. and Daniel Johnston. In her "First Cause of Action," plaintiff asserts a negligence claim for the injuries to David Johnston. In her "Second Cause of Action," plaintiff asserts a negligence claim for plaintiff's loss of consortium. In her "Third Cause of Action," plaintiff asserts a wrongful death claim for the death of David Johnston. And in her "Fourth Cause of Action," plaintiff asserts a claim for declaratory judgment concerning the existence, scope, and extent of insurance coverage under the various primary and excess insurance policies [1] that allegedly provided uninsured/underinsured motorist and liability coverage.

---

1. In paragraphs 33 and 34 of the complaint, as well as in the demand, plaintiff erroneously refers to the Allstate policies as "State Farm" policies. It is apparent to the court that such references are typographical errors, and they will, therefore, be treated as references to Allstate's policies.

{¶ 5} Specifically, with respect to the Allstate insurance coverage that existed at the time of the motor vehicle accident, plaintiff alleges in her complaint that:

{¶ 6} Allstate issued an automobile liability insurance policy containing UM/UIM coverage to, among others, Kathleen Johnston and David Johnston; that Kathleen Johnston and/or David Johnston were insureds under the Allstate policy; and that the various claims of the plaintiffs substantially exceed the aggregate limits of the Allstate policy.

{¶ 7} On March 30, 2001, plaintiff filed her first amended complaint, which added allegations that defendant Allstate had issued a homeowner's insurance policy containing UM/UIM coverage.

{¶ 8} In response to the complaint, Allstate filed its answer and cross-claim against defendant Osterland (for contribution and/or reimbursement), admitting that it issued an automobile liability insurance policy containing UM/UIM coverage to Kathleen Johnston as the named insured, but denying that Daniel[2] Johnston is a named insured in the policy. Allstate denied the substance of the rest of the allegations against Allstate and set forth several affirmative defenses. On April 12, 2001, Allstate filed a "separate answer of Allstate Insurance Company as it relates to the auto policy."

## SUMMARY JUDGMENT

{¶ 9} Civ.R. 56(C) states:

{¶ 10} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 11} Thus, before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and

---

2. Defendant Allstate appears to be responding to paragraph 5 of the complaint; however, in paragraph 5, plaintiff alleged that Allstate issued an automobile liability insurance policy containing UM/UIM coverage to, among others, Kathleen Johnston and *David* Johnston. Hence, Allstate's denial that *Daniel* Johnston was a named insured is inapposite.

viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.[3]

{¶ 12} The main purpose of the summary judgment procedure is to enable a party to go behind the allegations in the pleadings and assess the proof in order to see whether there is a genuine need for trial. The remedy should be applied sparingly and only in those cases where the justice of its application is unusually clear. Resolving issues of credibility, or reconciling ambiguities and conflicts in witness testimony is outside the province of a summary judgment.[4] In reviewing a motion for summary judgment, the court must construe the evidence and all reasonable inferences drawn therefrom in a light most favorable to the party opposing the motion.[5]

{¶ 13} Under Ohio law, for purposes of ruling on a motion for summary judgment, a dispute of fact is "material" if it affects the outcome of the litigation. The dispute is "genuine" if it is manifested by substantial evidence going beyond the mere allegations of the complaint.[6]

## ALLSTATE'S MOTION FOR SUMMARY JUDGMENT

{¶ 14} In its motion for summary judgment, Allstate argues first that the 1997 amendments to R.C. 3937.18 (eff. 9–3–1997)[7] apply to the Allstate policy as it validly existed on the date of the accident. In support of this argument,

---

3. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 667 N.E.2d 1197.

4. *Napier v. Brown* (1985), 24 Ohio App.3d 12, 24 OBR 33, 492 N.E.2d 847.

5. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

6. *Mount v. Columbus & S. Ohio Elec. Co.* (1987), 39 Ohio App.3d 1, 528 N.E.2d 1262.

7. {¶ a} By adding the following statutory language, Am.Sub.H.B. No. 261 (eff. 9–3–1997) authorized insurers to include in their policy what is known as the "other-owned auto" exclusion:

 {¶ b} "(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:

 {¶ c} "(1) While the insured is operating or occupying a motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy under which the uninsured and underinsured motorist coverages are provided."

 {¶ d} Similarly, Am.Sub.H.B. No. 261 added a definition section, which states:

Allstate filed the affidavit of its claims adjuster, Carl Chiappetta, who testified that (1) the inception date for the Allstate policy (No. 026272979) was December 12, 1982, (2) Kathleen Johnston was insured for uninsured motorist coverage under the Allstate policy, (3) following passage of the 1997 amendments, Kathleen Johnston received a policy endorsement (PDU89), which included relevant changes in the law affecting her contract of insurance, and (4) following receipt of the endorsement, Kathleen Johnston continued to pay her premiums on the policy. Allstate also attached to its brief in support a certified copy of the Allstate policy and the endorsement (PDU89) that was sent to Kathleen Johnston. The endorsement specifically included the following language as authorized by R.C. 3937.18(K)(2) and 3937.18(J)(1):

{¶ 15} "An Uninsured Auto Is Not:

{¶ 16} "* * *

{¶ 17} "A motor vehicle owned by, furnished to, or available for the regular use of the insured person, a spouse, or a resident relative of insured person.

{¶ 18} "Exclusions—What Is Not Covered

{¶ 19} "Allstate will not pay any damages an insured person or an additional insured person is legally entitled to recover because of bodily injury:

{¶ 20} "* * *

{¶ 21} "2. While in, on, getting into or out of, getting on or off, or when struck by an uninsured or underinsured motor vehicle owned by or available or furnished for the regular use of you or a resident which is not insured for this coverage."

■ {¶ 22} Citing *Ross v. Farmers Ins. Group of Cos.*,[8] Allstate correctly argues that, for the purpose of determining the scope of coverage of an underinsured motorist claim, the rights and duties of the parties to an automobile liability insurance contract are controlled by the statutory law in effect at the time of entering the contract. It is undisputed that the date of inception of the Allstate insurance policy was December 12, 1982. Under *Wolfe v. Wolfe*,[9] Allstate notes that every automobile liability insurance policy issued in this state must

---

{¶ e} "(K) As used in this section, 'uninsured motor vehicle' and 'underinsured motor vehicle' do not include any of the following motor vehicles:
{¶ f} "* * *
{¶ g} "(2) A motor vehicle owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured[.]"

8. *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732 (4–3) (Douglas, J., with Resnick, F.E. Sweeney and Pfeifer, JJ., concurring).

9. *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 250, 725 N.E.2d 261 (5–2) (Douglas, J., with Moyer, C.J., Resnick, F.E. Sweeney and Pfeifer, JJ., concurring).

have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39. Similarly, the commencement of each policy period brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy, and the statutory law in effect on the date of issue of each new policy is the law to be applied.[10] In the present case, it is undisputed that—prior to the accident on August 31, 1999—the Allstate insurance policy period commenced on December 12, 1998.

{¶ 23} Accordingly, the court finds that the Allstate insurance policy was governed by the version of R.C. 3937.18 that was amended effective September 3, 1997. This version of the statute includes authorization for the "household exclusion" and the "other-owned auto exclusion" as quoted above.

{¶ 24} It is undisputed that the motorcycle on which plaintiff's decedent was riding was "a motor vehicle owned by, furnished to, or available for the regular use of the insured person, a spouse, or a resident relative of insured person." The deposition testimony of Kathleen Johnston establishes that plaintiff was a co-owner of the motorcycle,[11] which was kept at her residence in an attached garage.[12] Plaintiff lived with her husband, Daniel Johnston, her daughter, Cheryl, and her son, David.[13] In short, the motorcycle was available to the person insured under the Allstate policy (Kathleen Johnston) and to all resident relatives of the insured person, including the plaintiff's decedent, David Johnston.

{¶ 25} Second, the injury to David Johnston occurred while the injured person was "in, on, getting into or out of, getting on or off, or when struck by an uninsured or underinsured motor vehicle owned by or available to or furnished for the regular use of you or a resident relative which is not insured for this coverage."

{¶ 26} Therefore, the "other-owned auto exclusion" and the "household exclusion" apply to the facts of this case. The only remaining question is whether those exclusions were valid under Ohio law.

{¶ 27} With respect to Allstate Policy No. 026272979, plaintiff argued in her motion for summary judgment that the policy provides UM/UIM coverage—over and above the limits of $25,000 under Daniel Johnston's liability policy issued by

10. Id.

11. See deposition of Kathleen Johnston, page 32.

12. See deposition of Kathleen Johnston, page 33.

13. See deposition of Kathleen Johnston, page 6.

Progressive Insurance—with UM/UIM limits of $100,000 each person/$300,000 each accident.[14] Citing *Moore v. State Auto Mut. Ins. Co.*,[15] plaintiff argued that the claims of "Kathleen and Daniel [16] Johnston" under the Allstate policy meet the four criteria for coverage: (1) that the claimant is insured under the subject policy, (2) that the claimant is legally entitled to recover damages from the uninsured/underinsured motorist, (3) that the damages arise from injury, sickness, or death, and (4) that the tortfeasor is an owner or operator of an uninsured or underinsured vehicle.

{¶ 28} With respect to the "other-owned auto exclusion" relied upon by Allstate, plaintiff argued in her reply brief (filed June 6, 2001) that (1) in *Martin v. Midwestern Group Ins. Co.*,[17] the Ohio Supreme Court struck down the "other-owned auto" exclusion, holding that the exclusion was unenforceable in UM/UIM policies because it violated the coverage mandated in R.C. 3937.18, (2) on September 3, 1997, "Senate Bill" (sic)[18] 261 altered the "other-owned auto exclusion" authorized by R.C. 3937.18(K)(2) by limiting the scope of the exclusion to "a motor vehicle owned by, furnished to, or available for the regular use of a *named insured,* a spouse, or a resident relative of a *named insured,*" [19] (3) the "other-owned auto" exclusion is ambiguous, and (4) the "other-owned auto" exclusion was eliminated by amendments to the statute that became effective on September 21, 2000.[20]

{¶ 29} With respect to the "household" exclusion relied upon by Allstate, plaintiff argues in her reply brief that the exclusion does not apply. Plaintiff

---

14. On page 7 of her brief, plaintiff asserts that "this Court must determine the existence of $1,000,000 of coverage under the Allstate Policy." Since the Allstate policy carries limits of $100,000/$300,000, it is unclear how the plaintiff arrived at this figure.

15. *Moore v. State Auto Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 31–32, 723 N.E.2d 97 (Douglas, Brogan, F.E. Sweeney and Pfeifer, JJ., concurring; Brogan, J., of the Second Appellate District, sitting for Resnick, J.)

16. Again, the court is unaware of any claim brought in this action by *Daniel* Johnston.

17. *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438.

18. It is apparent to the court that plaintiff was referring to Am.Sub.H.B. No. 261.

19. Plaintiff's argument in this regard is made by reference to her argument against defendant Westfield's reliance on the same exclusion in the Westfield policy. However, as is noted below, the "named insured" on the Westfield policy was Contour Tool, Inc., whereas the "named insured" on the Allstate policy was the individual plaintiff. In applying uninsured motorist coverage analysis, there is obviously a world of difference between these two fact patterns.

20. See Substitute Senate Bill No. 267, effective 9–21–2000. This legislation does not apply retrospectively to the Allstate policy.

notes that the exclusion— by its terms—excludes bodily injury claims by insured persons who are injured in connection with an underinsured motor vehicle where the vehicle is "owned by or available or furnished for the regular use of you or a resident," but only where the vehicle "is not insured for this coverage." Plaintiff argues that the vehicle in this case—the motorcycle—was, in fact, insured for uninsured/underinsured motorist coverage through the policy of insurance issued by Progressive Insurance Company. Therefore, plaintiff argues, the "household" exclusion does not apply.

{¶ 30} Although plaintiff's list of four criteria accurately describes some of the salient facts in *Moore,* the *Moore* decision stands for a very precise proposition of law. In *Moore,* the Supreme Court held that the rule announced in *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555 (policy limitation requiring that an insured must sustain bodily injury in order to recover for damages caused by uninsured motorist was void because it attempted to limit recovery contrary to the requirements of R.C. 3937.18) was not superseded by the General Assembly's enactment of Am.Sub. S.B. No. 20 (effective 10–20–1994). Therefore, in *Sexton,* State Farm's policy limitation—which similarly sought to limit such recovery to insureds who sustain bodily injury, and which was governed by S.B. 20—was likewise void for the same reason. In the present case, however, R.C. 3937.18(A)(1) was amended again by Am.Sub.H.B. No. 261 (effective 9–3–1997). Am.Sub.H.B. No. 261 changed some of the very statutory language on which the *Moore* decision expressly based its holding. This court is unaware of any binding authority holding that the analysis in *Moore* applies to the amendments in H.B. 261. Accordingly, the court concludes that the plaintiff's claims against defendant Allstate Insurance Company are barred by both the "other-owned auto exclusion" and the "household exclusion."

## CONCLUSION AND RULING

{¶ 31} Viewing the evidence most strongly in favor of plaintiff, the court concludes that there is no genuine issue of material fact, that reasonable minds can come to but one conclusion, and that conclusion is adverse to plaintiff. Therefore, Allstate's motion for summary judgment is well taken and is hereby granted.

{¶ 32} Accordingly, judgment is hereby rendered in favor of defendant Allstate Insurance Company and against plaintiff Kathleen Johnston, in her individual capacity and as the administrator of the estate of David Johnston, deceased, and defendant Allstate Insurance Company is hereby dismissed from this action with prejudice.

{¶ 33} IT IS SO ORDERED.

Judgment accordingly.