OPINION
{¶ 1} On November 20, 2000, Lisa M. Carmona filed a complaint against Donna K. Blankenship, Nationwide Assurance Company/Colonial Insurance Company of Wisconsin ("Nationwide") and State Automobile Insurance Company ("State Auto"). The complaint arose out of an automobile collision between Ms. Carmona and Ms. Blankenship that occurred on September 30, 2000. State Auto had issued a motor vehicle liability insurance policy to Ms. Carmona's parents, with whom Ms. Carmona was living at the time of the accident. On December 18, 2000, an amended complaint was filed adding Liberty Mutual Insurance Co. ("Liberty") as a defendant. Ms. Carmona was an employee of Sears, Roebuck and Co. ("Sears") at the time of the automobile accident, and Liberty had issued a business automobile liability policy to Sears. A third amended complaint added as a defendant Old Republic Insurance Company ("Old Republic"). Old Republic had issued a business automobile liability policy and a commercial general liability policy to Ms. Carmona's father's employer, Emerson Electric Co. In her complaint, Ms. Carmona sought, among other things, a declaration of the rights and responsibilities under the various insurance policies with regard to uninsured/underinsured motorist ("UM") coverage.
{¶ 2} Eventually, all defendants but State Auto, Liberty, and Old Republic had been dismissed. The parties filed motions for summary judgment. On July 6, 2001, the trial court rendered a decision granting summary judgment to State Auto. The trial court determined that Ms. Carmona was precluded from coverage under the State Auto automobile policy issued to her parents due to the "other-owned auto" exclusion contained therein.
{¶ 3} On August 14, 2001, the trial court rendered a decision granting summary judgment to Liberty. The trial court found that Liberty had properly offered and Sears had rejected UM coverage.
{¶ 4} On November 15, 2001, the trial court granted summary judgment to Old Republic. The trial court found that Old Republic had properly offered and Emerson Electric Co. had rejected UM coverage as to the business automobile liability policy and that there was no need to offer UM coverage for the commercial general liability policy.
{¶ 5} Ms. Carmona (hereinafter "appellant") has appealed to this court, assigning the following error for our consideration:
{¶ 6} "THE LOWER COURT ERRED IN FAILING TO FIND THE PLAINTIFF TO BE AN INSURED UNDER THE POLICIES OF INSURANCE WITH STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY AND OLD REPUBLIC INSURANCE COMPANY, AND IN FAILING TO DECLARE THE RIGHTS UNDER THESE CONTRACTS INCLUDING LIMITS OF COVERAGE, AND PRIORITY OF COVERAGE."
{¶ 7} As to each of the policies at issue here, the essential facts are not in dispute. Rather, the issues present questions of law; specifically, whether or not UM coverage is provided to appellant under the policies. The trial court determined that UM coverage was not available to appellant under any of the policies and, therefore, granted summary judgment in favor of Liberty, State Auto and Old Republic. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus. Our review of the appropriateness of summary judgment is de novo. See Andersen v. Highland House Co. (2001), 93 Ohio St.3d 547,548.
{¶ 8} We address the Liberty policy first. As indicated above, Liberty issued a business automobile liability policy to Sears, appellant's employer at the time of the accident. Appellant was not in a company car at the time of the accident and was not in the course and scope of her employment. Appellant sought UM coverage pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660.
{¶ 9} The Liberty policy had a liability limit of $5,000,000. However, according to Carla D. O'Hara, Liberty's Director of Technical Claims, Sears had rejected UM coverage by way of a written form signed October 1, 1998. The form indicated that such rejection was to apply to all subsequent renewals unless Sears requested otherwise in writing. On October 1, 1999, Sears signed another form purportedly rejecting UM coverage as to the renewal of the policy. The October 1, 1999 renewal and rejection was for the policy period at issue here — October 1, 1999 through October 1, 2000.
{¶ 10} Appellant contends that Sears' rejection of UM coverage was not valid because a proper offer of UM coverage was not given by Liberty pursuant to the requirements set forth in Linko v. Indemn. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445. Further, appellant asserts that no rejection at all was obtained from Sears as to UM coverage which Sears had purchased at reduced limits for those employees who operated company cars. Liberty asserts that Sears' rejection of UM coverage comports with the requirements of former R.C. 3937.18(C), as amended by Am.Sub.H.B. ("H.B.") 261, in effect at the relevant time. Appellant argues that H.B. 261 did not alter the Linko requirements. For the reasons that follow, we find that the trial court erred in determining that a valid rejection of UM coverage was given by Sears, as Liberty failed to make a proper offer of UM coverage.
{¶ 11} Former R.C. 3937.18, as amended by H.B. 261, stated:
{¶ 12} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle * * * unless both of the following coverages are offered * * *
{¶ 13} "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.
{¶ 14} "(2) Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage * * *.
{¶ 15} "* * *
{¶ 16} "(C) A named insured or applicant may reject or accept both coverages as offered under division (A) of this section, or may alternatively select both such coverages in accordance with a schedule of limits approved by the superintendent. The schedule of limits approved by the superintendent may permit a named insured or applicant to select uninsured and underinsured motorists coverages with limits on such coverages that are less than the limit of liability coverage provided by the automobile liability or motor vehicle liability policy of insurance * * *. A named insured's or applicant's rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants." (Emphasis added.)
{¶ 17} Liberty asserts that H.B. 261 superceded the offer requirements set forth in Linko, which addressed a pre-H.B. 261 version of the statute, and that the version of R.C. 3937.18(C) at issue here states that a written and signed rejection form creates a presumption of a valid offer, and no separate written offer is required. Liberty contends that Sears signed a written rejection of UM coverage thereby creating a presumption that a valid offer of UM coverage was made, and appellant has presented no evidence to rebut such presumption.
{¶ 18} This court has addressed the precise issue raised by appellant and Liberty. In Edstrom v. Universal Underwriters Ins. Co., Franklin App. No. 01AP-1009, 2002-Ohio-3334 and Dalton v. Wilson, Franklin App. No. 01AP-1014, 2002-Ohio-4015, this court held that the amendment to R.C. 3937.18(C) and the presumption contained therein did not eliminate the requirements set forth in Linko. Linko held that in order to satisfy the offer requirement in (former) R.C. 3937.18, the insurer must inform the insured of the availability of UM coverage, set forth the premium for UM coverage, include a brief description of the coverage, and expressly state the UM coverage limits in its offer. Id. at 447-449.
{¶ 19} As indicated above, Sears signed two alleged rejections of UM coverage. The first was for the previous policy period of October 1, 1998 to October 1, 1999, and the second was for the policy period at issue here. The "rejection" signed October 1, 1999 was for the policy period at issue here, and it is this "rejection" that must be analyzed under Linko. The earlier "rejection" did state that it would apply to all subsequent renewals absent a written request. However, Sears was given a new notice/selection form for the subsequent policy period and, therefore, this new form is the relevant form. Notwithstanding this, we note that both the previous "rejection" form and the form at issue here failed to comply with the Linko requirements.
{¶ 20} The October 1, 1999 form did not set forth the premiums for UM coverage and did not state the UM coverage limits offered. The liability limit in the policy was $5,000,000, and the "rejection" form did not so state nor did it expressly indicate that such limit for UM coverage was available. The "rejection" form signed for the previous policy period also failed to expressly state the UM coverage limits. The earlier form sets forth what appear to be premiums, however, it does not set forth a premium for UM coverage of $5,000,000.
{¶ 21} Because the October 1, 1999 "rejection" form did not contain premiums for UM coverage and did not state the UM coverage limits offered, no valid offer was made to Sears and, therefore, Sears' purported rejection was invalid. Obviously, because there was no valid offer/rejection of UM coverage in general, there was also no valid offer/rejection of the reduced UM coverage set forth elsewhere in the policy for those employees who operated company cars. Under our recent decisions in Edstrom and Dalton, the failure of Liberty to properly offer UM coverage results in UM coverage arising by operation of law in the amount of $5,000,000 — the liability limit in the policy.
{¶ 22} Liberty contends that even if UM coverage equal to the liability limit is read into the policy, UM coverage is still precluded here because the policy contains a so-called "other-owned auto" exclusion. Liberty cites our decision in Howard v. State Auto Mut. Ins. Co. (Mar. 14, 2000), Franklin App. No. 99AP-577 in support of its argument. Appellant, citing Demetry v. Kim (1991), 72 Ohio App.3d 692, motion to certify overruled in (1991), 61 Ohio St.3d 1422, asserts that because UM coverage arises by operation of law, any exclusionary language in the policy is unenforceable against such UM coverage.
{¶ 23} Here, UM coverage arises by operation of law because Liberty failed to properly offer general UM coverage as required in (former) R.C. 3937.18 and Linko. The other-owned auto exclusion upon which Liberty relies to deny general UM coverage, which arises by operation of law, is contained in an endorsement which provides reduced UM coverage for those employees who drive company cars. This is not the same UM coverage which arises by operation of law. Hence, this exclusion cannot be applied to preclude the general UM coverage which arises by operation of law.
{¶ 24} For all of the above reasons, the trial court erred in granting summary judgment in favor of Liberty. The trial court should have granted summary judgment in favor of appellant on the issue of whether the Sears policy provided, by operation of law, UM coverage up to the liability limit for Liberty's failure to make a proper offer of UM coverage.
{¶ 25} We next turn to the automobile liability policy issued by State Auto to appellant's parents. The trial court granted summary judgment to State Auto, finding appellant was precluded from UM coverage based on the presence of an other-owned auto exclusion. Appellant asserts that the other-owned auto exclusion is unenforceable under former R.C. 3937.18, as amended by Sub.S.B. ("S.B.") 267, effective September 21, 2000.[1] State Auto asserts that under Wolfe v. Wolfe (2000),88 Ohio St.3d 246, the version of R.C. 3937.18 in effect on August 15, 2000 — the date the new policy was issued — controls. State Auto asserts that former R.C. 3937.18, as amended by H.B. 261, was the version of the statute in effect on August 15, 2000 and that the other-owned auto exclusion was valid under former R.C. 3937.18(J)(1).
{¶ 26} In Dalton, supra, this court addressed how to determine, in light of Wolfe, the applicable policy period and, therefore, the applicable version of R.C. 3937.18. In order to determine the effective date of the new insurance contract, the court must ascertain the original issuance date of the policy and then count successive two-year policy periods from that date. Dalton at ¶ 19, citing Wolfe at 250. The statutory law in effect at the time of entering into a contract of insurance controls the rights and duties of the parties. Dalton at ¶ 20, citing Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281, syllabus.
{¶ 27} In the case at bar, the initial policy was issued on August 15, 1996. Hence, the last two-year policy period before the September 30, 2000 accident began to run August 15, 2000. Accordingly, the version of R.C. 3937.18 in effect on August 15, 2000 was H.B. 261. The relevant portion of R.C. 3937.18, as amended by H.B. 261, stated:
{¶ 28} "(J) The coverages offered under division (A) of this section or selected in accordance with division (C) of this section may include terms and conditions that preclude coverage for bodily injury or death suffered by an insured under any of the following circumstances:
{¶ 29} "(1) While the insured is operating or occupying a motor vehicle owned by * * * a named insured, a spouse, or a resident relative of a named insured, if the motor vehicle is not specifically identified in the policy under which a claim is made * * *[.]"
{¶ 30} Here, the State Auto policy states:
{¶ 31} "PART C — UNINSURED MOTORISTS COVERAGE
{¶ 32} "* * *
{¶ 33} "EXCLUSIONS
{¶ 34} "A. We do not provide Uninsured Motorists Coverage for `bodily injury' sustained by any person:
{¶ 35} "1. While `occupying,' or when struck by, any motor vehicle owned by you or any `family member' which is not insured for this coverage under this policy. * * *"
{¶ 36} There is no dispute that at the time of the collision, appellant was occupying her own vehicle, which was not a motor vehicle insured under the policy. Because the State Auto policy contained an "other-owned auto" exclusion which was valid under former R.C.3937.18(J)(1), as amended by H.B. 261, UM coverage was not available to appellant. Accordingly, summary judgment in favor of State Auto was appropriate.
{¶ 37} We now turn to the policies issued by Old Republic to appellant's father's employer, Emerson Electric Co./Liebert Corporation ("Emerson"). Old Republic issued two insurance policies to Emerson, a commercial general liability policy ("commercial policy") and a business auto policy. We address the commercial policy first. Appellant contends that the commercial policy was a motor vehicle liability policy subject to the requirements in R.C. 3937.18. Specifically, appellant asserts that because the commercial policy was a motor vehicle liability policy, Old Republic had to offer UM coverage in accordance with former R.C.3937.18(A) and (C), which Old Republic failed to do.
{¶ 38} Old Republic contends that under former R.C. 3937.18(L), as amended by H.B. 261, the commercial policy was not an automobile or motor vehicle liability policy of insurance. Old Republic states that the commercial policy specifically excludes, in essence, any liability arising out of the use of an insured's automobile and only provides coverage for parking an automobile (which is not owned by or rented/loaned to an insured) on or next to the insured's premises. R.C.3937.18(L), in effect at the pertinent time, stated:
{¶ 39} "(L) As used in this section, `automobile liability or motor vehicle liability policy of insurance' means * * *:
{¶ 40} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicle specifically identified in the policy of insurance[.]"
{¶ 41} R.C. 4509.01(K) states:
{¶ 42} "`Proof of financial responsibility' means proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle * * *."
{¶ 43} The commercial policy states, in pertinent part:
{¶ 44} "SECTION I — COVERAGES
{¶ 45} "COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
{¶ 46} "* * *
{¶ 47} "2. Exclusions
{¶ 48} "This insurance does not apply to:
{¶ 49} "* * *
{¶ 50} "g. Aircraft, Auto Or Watercraft
{¶ 51} "`Bodily injury' * * * arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and `loading or unloading'.
{¶ 52} "This exclusion does not apply to:
{¶ 53} "* * *
{¶ 54} "(3) Parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured."
{¶ 55} The issue before us is whether the extension of coverage for parking an automobile on or next to the insured's property makes the commercial policy an automobile liability or motor vehicle liability policy of insurance which is subject to the requirements in (former) R.C.3937.18, including the requirement that an offer of UM coverage be made. We find that the specific exception (essentially, parked vehicles) to the general exclusion does not render the commercial policy an automobile or motor vehicle liability policy of insurance as defined in (former) R.C.3937.18(L)(1), as amended by H.B. 261.
{¶ 56} Under (former) R.C. 3937.18(L)(1), an automobile or motor vehicle liability policy of insurance is one that serves as proof of financial responsibility (i.e., the ability to respond in damages for liability arising out of the use of a motor vehicle) for owners or operators of the motor vehicles specifically identified in the policy. Even if we assumed that the specifically identified vehicles were those automobiles, not owned by the insured, that are parked on or next to the insured's premises, the commercial policy would not serve as proof of financial responsibility for the owners/operators of those motor vehicles. The limited circumstances under which coverage is extended to the use of motor vehicles do not involve motor vehicles owned, used or operated by Old Republic and/or its employees. Rather, the coverage applied only to automobiles not owned by, or rented or loaned to Old Republic and its employees/insureds. This policy would not serve as proof of financial responsibility for the persons who operate the vehicles specifically identified in the policy, i.e., those automobiles, not owned by the insured, that are parked on or next to the insured's premises.
{¶ 57} Accordingly, the commercial policy is not an automobile or motor vehicle liability policy of insurance as defined in (former) R.C.3937.18(L)(1), as amended by H.B. 261. Hence, Old Republic did not have to adhere to the requirements in (former) R.C. 3837.18, including the requirement to offer UM coverage in connection with issuing the commercial policy. For this reason, the trial court did not err in concluding that Old Republic did not have to offer Emerson UM coverage in connection with the commercial policy.
{¶ 58} We now turn to the business auto policy issued to Emerson by Old Republic. The issue as to this policy is whether Emerson properly rejected UM coverage. Old Republic contends the evidence shows that on June 26, 1998 and March 15, 2000, Emerson's manager of corporate insurance signed rejections of UM coverage as to the business auto policy at issue. The corrected joint stipulations of fact did state that Emerson signed a rejection of UM coverage on March 15, 2000 and a rejection of UM coverage for the previous policy period on June 26, 1998. Copies of these rejections were attached to the stipulations.
{¶ 59} The rejection form for the policy period at issue here (signed March 15, 2000), did not set forth the premium for UM coverage. For the same reasons as discussed above with regard to the Liberty policy, the rejection of UM coverage under the Old Republic business auto policy was invalid because there was no proper offer of UM coverage pursuant to the Linko requirements. The failure of Old Republic to properly offer UM coverage in conjunction with the business auto policy results in UM coverage arising by operation of law in the amount of the liability limit in the policy.
{¶ 60} For this reason, the trial court erred in granting summary judgment in favor of Old Republic as to the business auto policy, and summary judgment should have been granted in favor of appellant on the issue of whether a proper offer of UM coverage was made by Old Republic.
{¶ 61} We note that Old Republic included in its brief what it refers to as cross-assignments of error. However, the record does not show that Old Republic filed a notice of appeal from the trial court's judgment. Further, the trial court did not address in its November 15, 2001 decision the additional arguments Old Republic sets forth in its appellate brief. Therefore, this court will not address such issues in the first instance, but will allow the trial court to do so on remand.
{¶ 62} In summary, we find that the trial court erred in granting summary judgment in favor of Liberty. The trial court should have granted summary judgment in favor of appellant on the issue of whether the Sears policy provided, by operation of law, UM coverage up to the liability limit for Liberty's failure to make a proper offer of UM coverage. The trial court also erred in granting summary judgment in favor of Old Republic as to the business auto policy, and summary judgment should have been granted in favor of appellant on the issue of whether a proper offer of UM coverage was made by Old Republic. However, the trial court correctly determined that Old Republic's commercial policy was not an automobile or motor vehicle liability policy of insurance, and summary judgment in favor of Old Republic in this regard was appropriate. Finally, summary judgment in favor of State Auto was appropriate.
{¶ 63} Accordingly, appellant's assignment of error is sustained in part and overruled in part. The judgment(s) of the Franklin County Court of Common Pleas is affirmed as to State Auto and is reversed as to Liberty and Old Republic (as to Old Republic's business auto policy), and this cause is remanded to such court with instructions to enter summary judgment(s) consistent with this opinion and to conduct further appropriate proceedings.
Judgment(s) reversed and cause remanded with instructions.
BRYANT and BOWMAN, JJ., concur.
[1] R.C. 3937.18 was yet again amended after S.B. 267, effective October 31, 2001.