[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} This is an appeal by plaintiffs-appellants, Robert J. Smith and Patrick Smith, from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, BAX Global ("BAX"), Air-Ride, Inc. ("Air-Ride"), Nationwide Mutual Insurance Company ("Nationwide") and intervenor Continental Casualty Company ("Continental").
 {¶ 2} On May 5, 1998, Samuel Huston was driving a truck on an interstate highway in Illinois, while Joan Huston was in the sleeper berth of the truck. At approximately 3:25 a.m., Huston's vehicle ran into the back of another truck stopped at a tollbooth. Samuel Huston and Joan Huston were both killed as a result of the collision and ensuing fire. The plaintiffs in this action are Joan Huston's sons.
 {¶ 3} On April 25, 2000, plaintiff, Robert J. Smith, individually and as the co-administrator of the estate of Joan Huston, filed a complaint, naming as defendants Air-Ride, Floyd A. Huston, II (the administrator of the estate of Samuel Huston), Progressive Insurance Co. ("Progressive"), Nationwide, State Farm Fire and Casualty Company ("State Farm") and various John Does. In the complaint, plaintiff alleged that Air-Ride and various John Does acted together in a joint venture, enterprise or business relationship providing freight delivery services as an interstate common carrier on May 5, 1998. It was further alleged that, on that date, in Flora, Illinois, Samuel Huston negligently and/or recklessly operated a loaded tractor trailer with combustible freight by proceeding in excess of the speed limit and failing to maintain an assured clear distance, striking a tractor trailer stopped in Huston's lane of traffic and causing the death of Joan Huston. Plaintiff sought to recover wrongful death and survivorship damages from the estate of Samuel Huston and Air-Ride. Plaintiff also sought uninsured motorist coverage benefits from Progressive, Nationwide and State Farm.
 {¶ 4} On May 9, 2000, plaintiffs, Robert J. Smith and Patrick Smith (collectively "plaintiffs"), filed an amended complaint. On October 10, 2000, Continental filed a motion to intervene, which the trial court subsequently granted. On November 29, 2000, Continental filed a complaint for declaratory relief, seeking a declaration that the liability coverage of a policy issued by Continental to Air-Ride did not apply to the May 5, 1998 accident, and that it had no duty to defend or indemnify Air-Ride.
 {¶ 5} On December 28, 2000, defendants Air-Ride and the estate of Samuel Huston filed a motion for summary judgment, asserting that the fatal injuries to Joan Huston occurred during the course and scope of her employment, and that defendants were entitled to judgment as a matter of law based upon complying employer and "fellow employee" immunities under the Workers' Compensation Act (R.C. 4123.74 and 4123.741).
 {¶ 6} On January 29, 2001, Nationwide filed a motion for summary judgment, arguing that uninsured/underinsured motorist coverage did not arise by operation of law under Nationwide's contractor's policy issued to Robert J. Smith. More specifically, Nationwide argued that its contractor's policy was not an automobile or motor vehicle liability policy of insurance pursuant to R.C. 3937.18.
 {¶ 7} On February 28, 2001, plaintiff Robert J. Smith filed a memorandum contra Nationwide's motion for summary judgment, as well as a cross-motion for partial summary judgment against Nationwide. Also on February 28, 2001, plaintiffs filed a motion for partial summary judgment as to Air-Ride. Both Progressive and Continental subsequently filed motions for summary judgment.
 {¶ 8} On May 21, 2001, plaintiffs filed a second amended complaint, adding BAX as a defendant. Plaintiffs alleged that defendants Air-Ride, BAX and/or certain John Does failed to reasonably and safely operate, maintain, inspect and control the equipment, freight and tractor-trailer operated by Samuel Huston, and that the negligent and/or reckless acts of defendants caused Joan Huston's fatal injuries. On July 10, 2001, BAX filed an answer and cross-claim against the estate of Samuel Huston. BAX also filed a cross-claim for indemnity and contribution against defendant Air-Ride.
 {¶ 9} On November 27, 2001, the trial court rendered a decision, granting summary judgment in favor of Continental, Nationwide and Progressive, and denying Air-Ride's motion for summary judgment, as well as plaintiffs' motion for partial summary judgment. Following the court's decision, Continental and Air-Ride filed motions requesting the court reconsider its rulings, and BAX filed a motion for summary judgment against plaintiffs. The trial court rendered a decision on May 14, 2002, granting the motions for summary judgment of BAX, Air-Ride, Continental, Nationwide, and Progressive, and denying plaintiffs' motion for partial summary judgment. The trial court filed an entry on June 4, 2002, rendering judgments in favor of BAX, Air-Ride and Floyd Huston, and ordering that Continental and Nationwide were each entitled to a declaration that there is no coverage available to plaintiffs under the respective policies issued by those insurers.
 {¶ 10} On appeal, plaintiffs set forth the following three assignments of error for review:
 {¶ 11} "I. The trial court erred in determining on summary judgment that appellants' decedent, Joan Huston was within the `scope of employment' at the time of a fatal collision, thereby giving rise to R.C. 4123.74, 4123.741 statutory immunity, because there were genuine issues of material fact as to who controlled the manner and means of performance, and/or her actions, if anyone, at the time of the collision.
 {¶ 12} "II. The trial court erred in determining that an exclusion contained in a commercial truckers' policy of insurance issued by appellee CNA prior to the effective date of H.B. 261 precluded coverage that was guaranteed by R.C. 3937.18.
 {¶ 13} "III. The trial court erred in determining that a commercial general liability policy of insurance issued by appellee Nationwide and providing liability coverage for autos, registered for use on public highways and while operated on such highways, is not an `auto' policy subject to R.C. 3937.18."
 {¶ 14} Under the first assignment of error, plaintiffs argue the trial court erred in finding that the Hustons were employees of Air-Ride at the time of the accident. Plaintiffs contend genuine issues of material fact exist regarding the issue of who controlled the manner and means of Joan Huston's performance and/or actions at the time of the collision.
 {¶ 15} In Corna/Kokosing Construction Co. v. South-Western City School Dist. Bd. of Educ., Franklin App. No. 02AP-624, 2002-Ohio-7028, this court noted the standard of review in considering an appeal from summary judgment as follows:
 {¶ 16} "Appellate review of summary judgments is de novo, under which the appellate court stands in the shoes of the trial court and conducts an independent review of the record. * * *
 {¶ 17} "Summary judgment is appropriately granted only where the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C)[.] * * * The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. * * * Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving [party] does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Civ.R. 56(E)[.] * * *" (Citations omitted.)
 {¶ 18} In general, "claims related to injuries sustained in the course of employment are addressed exclusively by the Ohio's Workers' Compensation statutes." Jessop v. Angelo Benedetti, Inc., Cuyahoga App. No. 80600, 2003-Ohio-3, at ¶ 15. Thus, "[u]nder Ohio law, employers who comply with the Workers' Compensation Act are granted immunity from civil liability for unintentional employment-related injuries." Id. at ¶ 20.
 {¶ 19} The immunity provided to employers is set forth under R.C.4123.74, which states in part as follows:
 {¶ 20} "Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury * * * received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury * * * occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter."
 {¶ 21} R.C. 4123.01(B)(2) defines "employer" to mean "[e]very person, firm, and private corporation * * * that (a) has in service one or more employees regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, or (b) is bound by any such contract of hire or by any other written contract, to pay into the insurance fund the premiums provided by this chapter."
 {¶ 22} Further, R.C. 4123.741, the "fellow servant doctrine," provides the same kind of immunity to any individual employee of an employer who participates in the state's workers' compensation fund." Jessop, supra. Thus, "[t]he intent of workers' compensation is to bar claims against fellow employees by a co-employee who has previously been compensated and made whole." Kelbley v. Hurley (1994), 94 Ohio App.3d 409,412.
 {¶ 23} In the present case, the trial court concluded that Joan Huston was an employee of Air-Ride, and that Huston was fatally injured in the course of and arising out of her employment with Air-Ride. The court further concluded that Air-Ride was a "covered employer," and therefore was statutorily immune from liability under the Workers' Compensation Act.
 {¶ 24} Plaintiffs assert that they presented facts, by way of deposition testimony and supporting documents, giving rise to a genuine dispute as to Joan Huston's employment status at the time of her death, and whether her death occurred in the course of and arising out of her employment with Air-Ride. Specifically, plaintiffs argue that, although Joan Huston and Samuel Huston signed employment agreements with Air-Ride, they also signed an exclusive remedy agreement acknowledging that Ohio would be the state having jurisdiction over work-related injuries. Plaintiffs contend that, under that agreement, the employer responsible for paying benefits or premiums is identified as First State Management Corporation ("First State"), and that all wages paid to Joan Huston, including wages paid for the time she worked on her last assignment, were from First State. Thus, plaintiffs argue that genuine issues of material fact exist as to whether, at the time of the collision, Samuel and Joan Huston were employees of First State. Plaintiffs also argue that genuine issues of material fact exist as to whether BAX retained the right to control the actions of Joan Huston by virtue of an agreement between BAX and Air-Ride.
 {¶ 25} Air-Ride argues that, at the time of the accident, First State and Air-Ride were one and the same company, and that the trial court therefore properly found Air-Ride to be the employer of Joan Huston and Samuel Huston. Thus, Air-Ride contends, the trial court properly granted summary judgment in its favor and in favor of the administrator of the estate of Samuel Huston on the basis of complying employer and fellow servant immunity.
 {¶ 26} The record in this case presents conflicting evidence as to the roles played by First State and Air-Ride in relation to Joan Huston's employment status. While the evidence indicates that Joan Huston signed an employment agreement with Air-Ride, there was also evidence that wage checks were issued by First State. Part of the evidence submitted on summary judgment included an employee earnings ledger identifying First State as Joan Huston's employer. A medical insurance enrollment form signed by Joan Huston also identified First State as her employer, and stated in part that, the employee "elect[s] to pay the employee premium for medical coverage under the First State Management Company Premium Conversion Plan * * *."
 {¶ 27} Albert L. Mackey, the Chief Executive Officer of Air-Ride, acknowledged during his deposition that First State was listed as the employer on a document showing an election of jurisdiction with the Ohio Bureau of Workers' Compensation ("BWC"). Page two of that document included the names of Joan Huston and Samuel Huston as employees of First State. When asked who paid the self-insured premiums to the BWC, Mackey was uncertain, stating, "I think it was Air-Ride, but I can't say." (Mackey Depo. at 26.) Another BWC document, dated May 11, 1998 and entitled "First Report on an Injury, Occupational Disease or Death," listed First State as the employer of Joan Huston. Mackey assumed that Air-Ride maintained separate accounting records and a separate checking account from First State, although evidence on this issue is also unclear. Mackey acknowledged that a check from the account of First State was issued for funeral expenses for Joan Huston, and he could not explain why First State paid those expenses rather than Air-Ride.
 {¶ 28} According to Mackey, First State was created around 1993, 1994 or 1995, after two employees of Air-Ride experienced medical problems "that ended up costing us a considerable amount of money." Id. at 14. Mackey testified that he spoke with a broker who "suggested there was a possibility of moving some of the employees under another name or another corporation, and when we did that, that we would be able to get a lower rate on those employees." Id. Mackey stated that First State was incorporated, and that all but ten employees of Air-Ride were moved "underneath that company," and "it became strictly a pass-through corporation for Air-Ride." Id. at 15. Mackey could not recall when First State was dissolved, but he agreed that the name First State was still being used as of March 24, 1998.
 {¶ 29} Construing the facts most strongly in favor of the non-moving party, as we are required on summary judgment, we find that genuine issues of material fact exist as to the legal status of First State, and whether Air-Ride was the "complying" or "covered employer" of Joan Huston for purposes of R.C. 4123.35. In arguing that Air-Ride and First State constituted the same corporation, Air-Ride characterizes First State as a "shell corporation," utilized for the purpose of reducing insurance costs. Although there was evidence suggesting First State may have existed solely for the benefit of Air-Ride, the record presented on summary judgment is such that reasonable minds could differ as to whether or not they had a separate existence. One court has observed that, when individual principals in a business enterprise elect to operate an enterprise through separate corporate entities for their own business and legal advantage, the structures they created "should not be lightly ignored at their behest" when they later seek to deny such separateness in order to shield them from liability. Buchner v. Pines Hotel, Inc. (1982), 448 N.Y.S.2d 870, 872. We note that, although the trial court did not at any length explore the relationship between First State and Air-Ride, we construe the court's decision as implicitly finding that First State was merely an "alter ego" of Air-Ride. On this point, if the evidence on remand supports Air-Ride's contention that First State is merely a "shell corporation," and therefore Air-Ride was the sole entity exercising control over Joan Huston, we would agree with the trial court's determination that Air-Ride would be entitled to the immunity afforded by the Workers' Compensation Act.[1]
 {¶ 30} Regarding plaintiffs' claim that the trial court erred in granting summary judgment in favor of BAX, we find no genuine issues of material fact as to whether BAX was an employer of Joan Huston. In its decision granting summary judgment in favor of BAX, the trial court noted that BAX, a freight forwarder, entered into a "Private Fleet Trucking Agreement" (hereafter "agreement") with Air-Ride. Further, at the time of the accident, the Hustons were operating a truck owned or leased by Air-Ride, and the truck was carrying freight pursuant to the contract between Air-Ride and BAX. As found by the trial court, the agreement provides in part that Air-Ride will remain an independent contractor, that it will route the vehicles, direct the operation of all equipment and its labor, and determine the method, means and manner of the performance of services. There was also no evidence that BAX paid the drivers or had the authority to hire or discharge them. The facts simply do not show an employment relationship between BAX and the Hustons, nor any assumption of control of the Hustons by BAX, and we conclude that the trial court properly granted summary judgment in favor of BAX.
 {¶ 31} Based upon the foregoing, plaintiffs' first assignment of error is sustained in part and overruled in part.
 {¶ 32} Under the second assignment of error, plaintiffs argue the trial court erred in determining that exclusion language in a policy of insurance issued by Continental precluded uninsured motorist coverage. Plaintiffs maintain that such coverage was guaranteed under R.C. 3937.18.
 {¶ 33} The record indicates that, in April of 1997, Continental issued a truckers policy of insurance to Air-Ride for a policy period of April 1, 1997 to April 1, 1998. Continental subsequently issued another policy containing a policy period of April 1, 1998 through April 1, 1999. The liability coverage section of the policy stated: "We will pay all sums an `insured' legally must pay as damages because of `bodily injury' or `property damage' to which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance or use of a covered `auto.' "
 {¶ 34} The policy contained an exclusion section that stated in part:
 {¶ 35} "This insurance does not apply to any of the following:
 {¶ 36} "* * *
 {¶ 37} "3. WORKERS' COMPENSATION
 {¶ 38} "Any obligation for which the `insured' or the `insured's' insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.
 {¶ 39} "4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY
 {¶ 40} "`Bodily injury' to:
 {¶ 41} "a. An employee of the `insured' arising out of and in the course of employment by the `insured'; or
 {¶ 42} "b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.
 {¶ 43} "This exclusion applies:
 {¶ 44} "(1) Whether the `insured' may be liable as an employer or in any other capacity; and
 {¶ 45} "(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
 {¶ 46} "* * *
 {¶ 47} "5. FELLOW EMPLOYEE
 {¶ 48} "`Bodily injury' to any fellow employee of the `insured' arising out of and in the course of the fellow employee's employment."
 {¶ 49} The policy also contained an "Ohio Uninsured Motorist's Coverage — Bodily Injury" endorsement. Section A, the coverage portion of the endorsement, provided in part:
 {¶ 50} "We will pay all sums the `insured' is legally entitled to recover as compensatory damages from the owner or driver of an `uninsured motor vehicle' because of `bodily injury' sustained by the `insured' caused by an `accident.'" Section C of the endorsement contained an "Exclusions" provision that stated in part: "This insurance does not apply to: * * * [t]he direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law."
 {¶ 51} In granting summary judgment in favor of Continental, the trial court initially determined, based upon the Ohio Supreme Court's decision in Wolfe v. Wolfe (2000), 88 Ohio St.3d 246, that the 1994 Am.Sub.S.B. No. 20 ("S.B. No. 20") version of R.C. 3937.18, rather than the 1997 Am.Sub.H.B. No. 261 ("H.B. No. 261") amendment, governed the uninsured motorist obligations of Continental under the policy issued to Air-Ride. Specifically, in construing Wolfe, the trial court found that, "[b]ecause each policy must be guaranteed for two years" pursuant to Wolfe, "H.B. No. 261's September 3, 1997 amendment to R.C. 3937.18(A) could not affect this policy until April 1, 1999." Further, while the trial court concluded that Air-Ride had statutory immunity from tort liability, pursuant to R.C. 4123.74, the court held that the S.B. No. 20 version of R.C. 3937.18 precluded Continental from using Air-Ride's statutory immunity from tort liability to affect plaintiffs' right to recover under any applicable uninsured motorist coverage.
 {¶ 52} The trial court then considered the language of the Continental policy to determine whether plaintiffs were covered under the uninsured motorist provisions of that policy. The court found that "[t]he language in this policy that excludes injured persons when they are covered by workers compensation is clear and unambiguous." Thus, the court held that, while Joan Huston "falls within the definition of `you,' she does not qualify as an insured because the policy does not cover `any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation or any similar law.' "
 {¶ 53} Plaintiffs assert that the trial court erred in granting summary judgment in favor of Continental by holding that the policy exclusion is enforceable to preclude uninsured coverage. Plaintiffs maintain that such an exclusion eliminating uninsured/underinsured ("UM/UIM") insurance is unenforceable under State Farm Auto Ins. Co. v. Alexander (1992), 62 Ohio St.3d 397.
 {¶ 54} In response, Continental, while asserting that the court properly granted summary judgment in its favor based upon the policy language, raises an alternative argument in support of affirmance, an argument it contends the court misunderstood in ruling on the summary judgment motion. Specifically, Continental maintains the trial court failed to recognize its argument that R.C. 3937.18(A)(1), as amended by H.B. No. 261, applied to Continental's policy, and therefore statutory immunity was a defense to plaintiffs' claim for uninsured motorist coverage.
 {¶ 55} We will first consider the issue of which version of R.C.3937.18, governing UM/UIM coverage in Ohio, is applicable in this case. Under Ohio law, "[t]he scope of the uninsured and underinsured motorist coverage under the policy is defined by the statutory law in effect at the time the parties initially contracted or at the time the policy was renewed." Gibbons-Barry v. Cincinnati Ins. Cos., Franklin App. No. 01AP-1437, 2002-Ohio-4898 at ¶ 22, citing Ross v. Farmers Ins. Group of Cols. (1998), 82 Ohio St.3d 281. As previously noted, the Ohio General Assembly amended the statute under H.B. No. 261, effective September 3, 1997. Prior to the amendment, the S.B. No. 20 version of R.C. 3937.18(A)(1) stated in part:
 {¶ 56} "The fact that the owner or operator of the uninsured motor vehicle has an immunity, whether based upon a statute or the common law, that could be raised as a defense in an action brought against him by the person insured under uninsured motorist coverage does not affect the insured person's right to recover under his uninsured motorist coverage." R.C. 3937.18(A)(1), as amended by H.B. No. 261, provided that, with the exception of diplomatic and political subdivision immunities, "any other type of statutory or common law immunity that may be a defense for the owner or operator of an uninsured motor vehicle shall also be a defense to an action brought by the insured to recover under uninsured motorist coverage."
 {¶ 57} R.C. 3937.31(A) states in part that "[e]very automobile insurance policy shall be issued for a period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years." R.C. 3937.30 defines "automobile insurance policy" as follows:
 {¶ 58} "As used in sections 3937.30 to 3937.39 of the Revised Code, `automobile insurance policy' means an insurance policy delivered or issued in this state or covering a motor vehicle required to be registered in this state which:
 {¶ 59} "(A) Provides automobile bodily injury or property damage liability, or related coverage, or any combination thereof;
 {¶ 60} "(B) Insures as named insured, any of the following:
 {¶ 61} "(1) Any one person;
 {¶ 62} "(2) A husband and wife resident in the same household;
 {¶ 63} "(3) Either a husband or a wife who reside[s] in the same household if an endorsement on the policy excludes the other spouse from coverage under the policy and the spouse excluded signs the endorsement. Nothing in this division (B)(3) shall prevent the issuance of separate policies to each spouse or affect the compliance of the policy with Chapter 4509. of the Revised Code as to the named insured or any additional insured.
 {¶ 64} "(C) Insures only private passenger motor vehicles or other four-wheeled motor vehicles which are classified or rated as private passenger vehicles and are not used as public or private livery, or rental conveyances;
 {¶ 65} "(D) Does not insure more than four motor vehicles;
 {¶ 66} "(E) Does not cover garage, automobile sales agency, repair shop, service station, or public parking operation hazards;
 {¶ 67} "(F) Is not issued under an assigned risk plan pursuant to section 4509.70 of the Revised Code."
 {¶ 68} As indicated above, the trial court, relying upon Wolfe, supra, held that the S.B. No. 20 version of the statute, rather than the H.B. No. 261 version, was applicable. In Wolfe, supra, the court held at paragraph one of the syllabus: "Pursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39." In addition to interpreting R.C. 3937.31(A) as mandating a two-year period following issuance of a policy, the court in Wolfe also held that "[t]he commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy." Id., paragraph two of the syllabus.
 {¶ 69} Continental argues that its truckers' policy covers 18-wheel tractor-trailers that are not classified or rated as private passenger vehicles and which are used as public livery. As such, Continental contends that the policy is not an "automobile liability insurance policy" to which the two-year requirement under R.C. 3937.31
and Wolfe applies.
 {¶ 70} In support, Continental cites case law construing various commercial policies as not falling within the statutory definition of "automobile insurance policies," therefore rendering the two-year requirement under Wolfe inapplicable. See Bertram v. West American Ins. Co., Cuyahoga App. No. 81313, 2002-Ohio-6513 (commercial business owner's policy, issued to provide coverage to an automobile service garage, is not considered to be an automobile insurance policy under R.C. 3937.30(E)); Zurcher v. Natl. Surety Corp. (Feb. 25, 2002), Stark App. No. 2001CA00197 (where the policies at issue covered five specifically identified automobiles, court held that "such policies are not `automobile insurance polic(ies)' within the definition of R.C. 3937.31"); Price v. Ayers, Stark App. No. 2002CA00124, 2002-Ohio-5479 (also finding R.C. 3937.31(A) inapplicable to a commercial automobile policy insuring more than four motor vehicles); McPherson v. Whitt, Cuyahoga App. No. 81442, 2002-Ohio-6060.
 {¶ 71} In Cunningham v. Transcontinental Ins. Co., Hamilton App. No. C-020157, 2002-Ohio-7338, the First District Court of Appeals adopted the rationale of the Fifth and Eighth District Court of Appeals in Zurcher, Price, and McPherson, supra, in holding that a policy insuring more than four vehicles did not satisfy the definition of "automobile insurance policy" under R.C. 3937.30, and that such a policy was not required to contain the guaranteed two-year policy period provided for in R.C. 3937.31(A). The court further noted that the vehicles at issue "were not personal vehicles, but were vehicles owned by the company." We note that this court declined to extend the rationale of Wolfe in a case involving a homeowner's policy, holding that, "the Supreme Court has not applied either Wolfe or R.C. 3937.31(A) to an insurance policy that is not on its face an automobile liability insurance policy." Dixon v. Professional Staff Mgmt., Franklin App. No. 01AP-1332, 2002-Ohio-4493, at ¶ 23.
 {¶ 72} In Bollinger v. The Empire Fire Marine Ins. Co. (Dec. 23, 1986), Lawrence App. No. 1785, the court construed the language of R.C. 3937.30 in the context of a "business auto policy" covering a 1966 International "tractor." The court concluded that, "the definition of `private passenger motor vehicle' cannot reasonably or logically be intended to include tractors and tractor trucks." Id. The court noted that, "[a]lthough these vehicles certainly are imbued with the capacity to serve the purpose of merely carrying passengers, they are not `designed and used' with this as a main purpose. See R.C. 4501.01(E). This is separate and distinct from the types of vehicles that have thus been held in Ohio to be `private passenger motor vehicle(s)', that is, cars and motorcycles." Id.
 {¶ 73} In the present case, we agree with Continental's contention that the commercial truckers' policy at issue, covering 18-wheel vehicles used in Air-Ride's business to deliver goods for commercial purposes, does not fall within the ambit of "private passenger motor vehicles," and is not the type of policy R.C. 3937.30 contemplates. Bollinger, supra. More specifically, the policy is not, pursuant to R.C. 3937.30(C), an insurance policy which "insures only private passenger motor vehicles or other four wheeled motor vehicles which are classified or rated as private passenger vehicles and are not used as public or private livery or rental conveyances."
 {¶ 74} Given our determination that the subject truckers' policy is not an "automobile liability insurance policy" under R.C. 3937.30 or3937.31, we find Wolfe to be inapplicable. Further, based upon the policy period at issue, covering April 1, 1998 to April 1, 1999, we find that such policy is governed by the H.B. No. 261 version of R.C. 3937.18, under which statutory immunity "that may be a defense for the owner or operator of an uninsured motor vehicle shall also be a defense to an action brought by the insured to recover under uninsured motorist coverage." We therefore disagree with the trial court's finding that any statutory immunity (i.e., in the instant case immunity under the Workers Compensation Act) available to Air-Ride would not extend to Continental. However, we agree with the trial court's determination that plaintiffs are not entitled to uninsured motorist coverage, but we do so based upon application of H.B. No. 261, affording Continental, as a defense to payment of uninsured benefits, the same exclusive remedy of the workers' compensation scheme available to Air-Ride.
 {¶ 75} Accordingly, plaintiffs' second assignment of error is without merit and is overruled.
 {¶ 76} Under the third assignment of error, plaintiffs assert the trial court erred in determining that a commercial general liability policy of insurance issued by Nationwide is not an "auto" policy subject to R.C. 3937.18.
 {¶ 77} In the present case, Nationwide issued a contractor's general liability policy to plaintiff Robert J. Smith, who operates a business called Morgan Framing. In its November 27, 2001 decision, the trial court concluded that, although the Nationwide policy provided incidental coverage to cherry pickers and similar equipment mounted to a motor vehicle chassis, such incidental coverage did not transform the contractor's liability into a motor vehicle liability policy. The trial court relied in part on the Ohio Supreme Court's decision in Davidson v. Motorist Mut. Ins. Co. (2001), 91 Ohio St.3d 262.
 {¶ 78} We begin our analysis by considering the language of the policy at issue. As noted by the trial court, the liability coverage form applies to bodily injuries and property damage resulting from an accident in the policy's covered territory, and the policy, which is 30 pages long, repeatedly excludes coverage for motor vehicles of different types. Specifically, the policy excludes coverage for bodily injury or property damage "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured." (Contractors Liability Coverage Form, at 4.) The policy defines "auto" as "a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment." Id. at 11. In addition, the policy states that covered property does not include "automobiles, dirt bikes, house trailers, mobile homes, mopeds, motorcycles, motorized bicycles or tricycles, snowmobiles, trucks and vehicles primarily designed and licensed for road use." (Contractor Equipment and Portable Tools Coverage Forms, at 1.) Covered property also "does not include * * * aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration, and * * * vehicles or self-propelled machines that are operated principally away from the described premises." Id. at 2. As also noted by the trial court, the declaration pages make no reference to motor vehicles of any type.
 {¶ 79} However, the policy contains certain exceptions to the auto exclusion, including the provision that "`auto' does not include `mobile equipment.'" (Contractor's Liability Coverage Form, at 11.) Under Section F of the Contractor's Liability Coverage Form, "mobile equipment" is defined as follows:
 {¶ 80} "8. `Mobile Equipment' means any of the following types of land vehicles, including any attached machinery or equipment:
 {¶ 81} "a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;
 {¶ 82} "* * *
 {¶ 83} "e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:
 {¶ 84} "(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or
 {¶ 85} "(2) Cherry pickers and similar devices used to raise or lower workers[.]"
 {¶ 86} Further, the "auto" exclusion does not apply to parking an auto on or next to the premises provided the "auto" is "not owned by or rented or loaned to you or the insured."
 {¶ 87} Plaintiffs contend that, because the policy provides liability coverage for the special equipment mounted on an auto chassis, as well as for autos being parked on or near owned premises, it qualifies as a "limited form" of motor vehicle liability coverage, thereby entitling them to UM/UIM coverage under R.C. 3937.18(A). In support, plaintiffs rely upon the Ohio Supreme Court's holding in Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541. Plaintiffs further contend the trial court erred in relying upon the Ohio Supreme Court's decision in Davidson, supra.
 {¶ 88} We note the trial court found the S.B. No. 20 version of R.C. 3937.18 to be applicable to the policy at issue. The policy first became effective on April 2, 1997 for a one-year term, and it was renewed on April 2, 1998, approximately one month prior to the accident. As also previously noted, the legislature, pursuant to H.B. No. 261, amended R.C.3937.18 effective September 3, 1997.
 {¶ 89} Nationwide argues that its contractor's policy is not an "automobile insurance policy" as defined by R.C. 3937.30, and thus it contends that the two-year requirement of Wolfe, supra, does not apply to this policy. Nationwide further argues that, even if the S.B. No. 20 version of R.C. 3937.18 is the correct version, the policy still does not qualify as an automobile liability insurance policy subject to the requirements of R.C. 3937.18. For the reasons that follow, we agree with Nationwide's contention that, under either the pre-or post-H.B. No. 261 version of R.C. 3937.18, the policy is not a motor vehicle liability insurance policy within the meaning of the statute.
 {¶ 90} In Selander, supra, the court held that a general business liability policy that generally excluded coverage for automobile claims, but did provide liability coverage for "hired" or "non-owned" vehicles, brought it within the class of policies under which UM/UIM coverage arises by operation of law. The court stated, "[w]here motor vehicle liability coverage is provided, even in limited form, uninsured/underinsured coverage must be provided." Id. at 543.
 {¶ 91} In Davidson, supra, the Ohio Supreme Court held:
 {¶ 92} "A homeowner's insurance policy that provides limited liability coverage for vehicles that are not subject to motor vehicle registration and that are not intended to be used on a public highway is not a motor vehicle liability policy and is not subject to the requirement of former R.C. 3937.18 to offer uninsured and underinsured motorist coverage." Id. at syllabus.
 {¶ 93} In Davidson, supra, at 267-268, the court distinguished its decision in Selander, stating that:
 {¶ 94} "In Selander, we were construing a general business liability policy that expressly provided insurance against liability arising out of the use of automobiles that were used and operated on public roads. * * * In contrast, the policy at issue in this case is a homeowner's policy that does not include coverage for liability arising out of the use of motor vehicles generally. Instead, the homeowner's policy provides incidental coverage to a narrow class of motorized vehicles that are not subject to motor vehicle registration and are designed for off-road use or are used around the insured's property.
 {¶ 95} "* * * Clearly, the policy in Selander was deemed an automobile liability or motor vehicle policy precisely because there was express liability coverage arising from the use of automobiles. * * *"
 {¶ 96} The court further made clear that "we never intended Selander to be used to convert every homeowner's policy into a motor vehicle liability policy whenever any incidental coverage is afforded for some specified type of motorized vehicle." Rather, "Selander stands only for the proposition that UM/UIM coverage is to be offered where a liability policy of insurance expressly provides for coverage for motor vehicles without qualification as to design or necessity for motor vehicle registration."
 {¶ 97} More recently, in Hillyer v. State Farm Fire Cas. Co. (2002), 97 Ohio St.3d 411, 2002-Ohio-6662, the Ohio Supreme Court discussed both Selander and Davidson, stating in relevant part:
 {¶ 98} "* * * [T]he descriptive factors in Davidson-whether the vehicle was subject to registration and designed for use on a public road-did not alone support our opinion in Davidson or differentiate it from Selander. We looked to the type of coverage each policy provided. * * * The coverage in Davidson was not incidental merely because it involved recreational vehicles. Instead, it was incidental primarily because coverage of those vehicles was remote from and insignificant to the type of overall coverage the policy provided. * * *
 {¶ 99} "Like the policy in Davidson, the policies at issue expressly exclude liability coverage for injuries arising from the use of motor vehicles. * * * If coverage arises under this exception, it is because the residence employee was injured, not because a motor vehicle was involved. The use of a motor vehicle is merely incidental to coverage against liability to the residence employee. * * *
 {¶ 100} "We agree with the analysis of the Cuyahoga County Court of Appeals in Panozzo v. Allstate Ins. Co. (Sept. 13, 2001), Cuyahoga App. No. 79083 * * * that 'the defining characteristic of coverage is the person injured [the residence employee], not the fact that a motor vehicle was involved.' '[T]he fact that an automobile may be involved is incidental to coverage * * *.' "
 {¶ 101} Subsequent to the Supreme Court's decision in Hillyer, the Eighth District Court of Appeals, in Mazzocki v. State Farm Fire Cas. Co., Cuyahoga App. No. 81274, 2003-Ohio-745 considered whether an employer's commercial general liability insurance policy was an automobile policy that was statutorily required to provide underinsured motorist coverage. The policy in Mazzocki excluded damages "for 'bodily injury * * * arising out of the ownership, maintenance, operation, use, loading or unloading of * * * any automobile * * * owned or operated by or rented or loaned to any insured * * * or * * * any other automobile * * * operated by any person in the course of their employment by any insured.' " Id. at 6. The automobile exclusion was subject to several exceptions, however, including the provision that, " '[t]his exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or on the ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured.' " Id. at 7. The exclusion was also inapplicable if a non-owned private or commercial automobile is used in the business of the named insured. The trial court held that the commercial general liability policy was not an automobile liability policy for purposes of underinsured motorist coverage.
 {¶ 102} On appeal, the court in Mazzocki affirmed, relying on both Davidson and Hillyer, and holding in relevant part:
 {¶ 103} "To be sure, Hillyer [and] Davidson * * * all construed homeowner's policies, unlike the commercial general liability policy at issue in this case. Nonetheless, a policy's title is not determinative. '[I]t is the type of coverage provided, not the label affixed by the insurer, that determines the type of policy.' * * *
 {¶ 104} "Consequently, in determining whether coverage in a policy of insurance is incidental, Hillyer requires us to look at the type of coverage provided by the policy. Id. at 22 * * *. Elucidating its decision in Davidson, the Hillyer court stated that the coverage in Davidson was incidental not because it involved recreational vehicles but rather 'it was incidental primarily because coverage of those vehicles was remote from and insignificant to the type of overall coverage the policy provided.' Id.
 {¶ 105} "Unlike Selander where there was express coverage under a business liability policy, there is no express provision of coverage in the within policy. To the contrary, coverage is available only if an exception to a general exclusion is applicable. Similar to the policies at issue in Davidson and Hillyer, that coverage is limited by class of vehicles and is available only under narrow circumstances; namely under the parking and non-owned business use exceptions. This narrow class of coverage supports that it is remote from and insignificant to the overall type of coverage afforded under the commercial general liability policy of insurance at issue in this case. Because the use of an automobile is merely incidental to coverage afforded under the commercial general liability policy, we find that the limited liability coverage that may arise under this policy is insufficient to transform the policy into an automobile policy for purposes of UIM coverage." Id. at 's 18-20.
 {¶ 106} Two other recent decisions, Ribeiro v. John Doe Ins. Cos., Cuyahoga App. No. 81396, 2003-Ohio-433, and Wiley v. Grange Mut. Cas. Co., Summit App. No. 21145, 2003-Ohio-539 reached similar results. In Ribeiro, the court construed a policy containing "parking" and "mobile equipment" exceptions to an auto exclusion in light of the Hillyer decision, holding in part:
 {¶ 107} "While plaintiff urges us to find coverage because the policy affords coverage for injuries sustained in parking an auto on the ways next to a premise owned by the insured and in using certain 'mobile equipment,' we remain unpersuaded. Such provisions provide only remote and incidental coverage insufficient to transform the policy into a motor vehicle policy." Id. at 36.
 {¶ 108} In Wiley, supra, an employee contended that his employer's commercial general liability policy, containing a "parking" exception, provided UM/UIM coverage. The trial court granted the insurer's motion for summary judgment. On appeal, the court in Wiley relied upon Davidson, supra, in holding that the "parking" exception did not transform the policy, "which does not precisely, particularly, or individually identify any vehicles covered," into an automobile liability policy requiring UM/UIM coverage under either the pre-H.B. No. 261 or post-H.B. No. 261 version of R.C. 3937.18.
 {¶ 109} Nationwide has cited a federal case, Clark v. Chubb Group of Ins. Cos. (Oct. 19, 2001), N.D. Ohio Case No. 1:00 CV 2989, in which the court construed Ohio law. In Clark, plaintiffs sought UM/UIM coverage under a comprehensive general liability policy that expressly excluded coverage "for 'bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any * * * aircraft * * * watercraft * * * or auto * * * which any insured owns, operates, rents, or borrows.' " However, similar to the Nationwide policy in the instant case, the policy in Clark provided for "parking" and "mobile equipment" exceptions. The court, relying upon Davidson, supra, held that the parking and mobile equipment exceptions to the auto exclusion contained in the comprehensive general liability policy "could not possibly render the policy 'an automobile or motor vehicle liability' policy for purposes of Ohio Rev. Code 3937.18."
 {¶ 110} In the present case, similar to the policies at issue in the above-cited cases, Nationwide's contractors general liability policy specifically excludes coverage for the operation of automobiles, and "coverage is available only if an exception to a general exclusion is applicable." Mazzocki, supra. Further, the coverage is "available only under narrow circumstances," i.e., the "parking" and "mobile equipment" exceptions to the exclusion. Id. Here, we conclude the trial court properly found that the incidental coverage provided for parking and mobile equipment listed in the exception to the motor vehicle exclusion is insufficient to transform the contractor's policy into a motor vehicle liability policy.
 {¶ 111} Plaintiffs' third assignment of error is without merit and is overruled.
 {¶ 112} Based upon the foregoing, plaintiffs' first assignment of error is sustained in part and overruled in part, plaintiffs' second and third assignments of error are overruled, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
TYACK and DESHLER, JJ., concur.
[1] We further note that, assuming the evidence on remand indicates that First State is merely an alter ego of Air-Ride, we would agree with the trial court's determination that Joan Huston was injured in the course of and arising out of her employment with Air-Ride at the time of her death. Construing the evidence most strongly in favor of plaintiffs, the record supports the trial court's finding that Samuel Huston and Joan Huston were hired as "team drivers," and that they were on Huston and Joan Huston were hired as "team drivers," and that they were on a dedicated run at the time of the accident.