**[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 246.]**

WOLFE, APPELLANT, *v.* WOLFE ET AL.; COLONIAL PENN INSURANCE COMPANY, APPELLEE.

[Cite as *Wolfe v. Wolfe*, 2000-Ohio-322.]

*Insurance—Motor vehicles—Policy period for liability insurance—R.C. 3937.31(A), construed and applied.*

1.  Pursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39.

2.  The commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy.

3.  The guarantee period mandated by R.C. 3937.31(A) is not limited solely to the first two years following the initial institution of coverage.

(No. 98-2630—Submitted November 3, 1999—Decided March 29, 2000.)

APPEAL from the Court of Appeals for Montgomery County, No. 17111.

————————————

{¶ 1} The facts of this matter are largely undisputed. Appellant, Marie B. Wolfe, and her husband, George L. Wolfe, were insured under a policy of automobile liability insurance issued through appellee, Colonial Penn Insurance Company. It is undisputed that automobile liability coverage was originally purchased from appellee in 1983. The policy in the case now before us provided liability coverage in the amounts of $100,000 per person and $300,000 per occurrence. The policy under consideration also provided uninsured/underinsured motorist coverage with limits of $15,000 per person and $30,000 per occurrence.

**{¶ 2}** On April 2, 1995, appellant was riding as a passenger in an automobile owned and operated by her husband. Appellant suffered extensive injuries when the vehicle in which she was travelling was involved in an accident. Appellant thereafter filed a complaint against several defendants in the Court of Common Pleas of Montgomery County seeking recovery for the damages she sustained from the accident. Relevant to this matter, appellant alleged that her husband was negligent in the operation of his motor vehicle and, as a result thereof, appellant sustained personal injuries. In addition, appellant sought a declaration that she was entitled to recover benefits from the underinsured motorist provision of the policy provided by appellee.

**{¶ 3}** On January 5, 1998, appellee paid appellant $100,000, the limit of liability coverage provided under the policy at issue, in settlement of appellant's claims against her husband. On March 6, 1998, the trial court granted summary judgment in favor of appellee. In rejecting appellant's assertion that she was entitled to underinsured motorists benefits, the trial court determined that this matter was governed by the version of R.C. 3937.18 that was enacted as part of Am.Sub.S.B. No. 20 on October 20, 1994. Appellant had argued that *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, controlled the outcome of her underinsured motorist claim. However, the trial court reasoned that "[a]ll events relevant in deciding the application of the governing law took place after the enactment of [Am.Sub.]S.B. [No.] 20." Thus, pursuant to the provision of the statute at issue, R.C. 3937.18(A)(2),[1] as well as the terms of the policy, the trial court concluded that appellant could not recover underinsured motorist benefits.

---

1. According to the provisions of Section 7 of Am.Sub.S.B. No. 20, it was the intent of the General Assembly in amending R.C. 3937.18(A)(2) to supersede the effects of this court's holding in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, relative to the issue of denying recovery of underinsured motorist benefits in those situations where the tortfeasor's liability limits are greater than or equal to the limits of underinsured motorist coverage. 145 Ohio Laws, Part I, 238.

**{¶ 4}** On appeal, the Court of Appeals for Montgomery County affirmed the judgment of the trial court. The court of appeals determined that the policy of automobile liability insurance covering appellant was renewed on December 12, 1994, after the enactment of Am.Sub.S.B. No. 20. The court of appeals, relying on our decision in *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, found that this renewal constituted a new policy of insurance and, thus, that the statutory law in effect on the date of renewal, *i.e.,* R.C. 3937.18 as amended by Am.Sub.S.B. No. 20, was incorporated into the policy of insurance and governed the terms of the coverage. The court of appeals further held, despite appellant's argument to the contrary, that R.C. 3937.31(A),[2] which prescribes a minimum two-year policy period for automobile insurance, applied only to the initial, or original, issuance of an automobile liability insurance policy and not to subsequent continuations or renewals of the insurance contract. The court of appeals therefore concluded that the trial court did not err when it applied the version of R.C. 3937.18 that was enacted as part of Am.Sub.S.B. No. 20 to deny appellant's underinsured motorist claim.

**{¶ 5}** This matter is now before this court pursuant to the allowance of a discretionary appeal.

————————————

*Elk & Elk Co., L.P.A.,* and *Todd O. Rosenberg,* for appellant.

*Ulmer & Berne, L.L.P.,* and *Carl A. Anthony,* for appellee.

*Sandra J. Rosenthal,* urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

————————————

2. See *infra.*

**DOUGLAS, J.**

{¶ 6} This court is called upon yet again to resolve issues involving automobile insurance policies and provisions of uninsured and underinsured motorist coverage. In this matter we are asked by the parties to interpret R.C. 3937.31(A). Specifically we must decide what effect R.C. 3937.31(A) has in determining the applicable law governing appellant's underinsured motorist claim. For the reasons that follow, we find that the trial court and the court of appeals erred in their respective resolutions of this matter.

{¶ 7} R.C. 3937.31 provides in part:

"(A) Every automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years. Where renewal is mandatory, 'cancellation,' as used in sections 3937.30 to 3937.39 of the Revised Code, includes refusal to renew a policy with at least the coverages, included insureds, and policy limits provided at the end of the next preceding policy period. No insurer may cancel any such policy except pursuant to the terms of the policy, and in accordance with sections 3937.30 to 3937.39 of the Revised Code * * *."

{¶ 8} Appellant contends that, as a matter of law, all automobile liability insurance policies issued in this state must have, at a minimum, a guaranteed two-year policy period. Appellant interprets R.C. 3937.31(A) to require that the policy period be at least two years regardless of the number of one month, six-month, or yearly renewals. Appellant further argues that R.C. 3937.31(A) establishes the existence of successive two-year policy periods. In contrast, appellee claims that the "guarantee period" set forth in R.C. 3937.31(A) applies only to the first two years after an insurance company initially issues coverage to an insured.

{¶ 9} Since the statutory provision at issue is subject to varying interpretations, it is fair to say that it is ambiguous. Therefore, R.C. 3937.31(A) must be construed to give effect to the legislative intent. *Harris v. Van Hoose*

(1990), 49 Ohio St.3d 24, 26, 550 N.E.2d 461, 462, citing *Cochrel v. Robinson* (1925), 113 Ohio St. 526, 149 N.E. 871, paragraph four of the syllabus. It is a cardinal rule of statutory interpretation that a court must first look to the language of the statute itself to determine legislative intent. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381. In addition, R.C. 1.49 provides that if a statute is ambiguous, the court, in determining the intention of the legislature, may consider, among other matters, both the objective of the statute and the consequences of any particular construction.

{¶ 10} We conclude initially that the language of the statute does not support appellee's position. R.C. 3937.31(A) provides that "[*e*]*very* automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years." (Emphasis added.) In promulgating R.C. 3937.31(A), the General Assembly, in its wisdom, decided not to choose language that would limit any guarantee policy period solely and entirely to the first two years following the insurer's original offering of coverage. Had the General Assembly intended otherwise, it could easily have said so.

{¶ 11} In addition, R.C. 3937.31(B), construed with R.C. 3937.31(A), contemplates successive two-year policy periods. R.C. 3937.31(B) establishes that "[s]ections 3937.30 to 3937.39 of the Revised Code do not prohibit: * * * (4) [a]n insurer's refusing for any reason to renew a policy upon its expiration at the end of *any* mandatory period, provided such nonrenewal complies with the procedure set forth in section 3937.34 of the Revised Code." (Emphasis added.) There is no question that the "mandatory period" of R.C. 3937.31(B)(4) refers to the two-year period set forth in R.C. 3937.31(A). According to appellee, there can be only *one* two-year mandatory period, *i.e.,* the two-year period after the insurance company *first* issues coverage to the insured. However, by obvious implication, use of the word "any" to modify "mandatory period" suggests that the statute contemplates

successive, mandatory policy periods. Clearly, R.C. 3937.31(B) provides support for the proposition that the General Assembly, by enacting R.C. 3937.31(A), intended to provide for mandatory two-year periods beyond the first two years following initiation of coverage. To interpret R.C. 3937.31(B)(4) any other way would render the language of R.C. 3937.31(A) inoperative.

{¶ 12} Moreover, the objective sought by the General Assembly in promulgating the statutory scheme involved herein would be defeated should we reach any other conclusion. One of the purposes behind R.C. 3937.31 is to ensure that consumers of automobile liability insurance are able to maintain the level of coverage and policy limits that they had originally contracted for. See R.C. 3937.31(A) (" 'cancellation,' * * * includes refusal to renew a policy with at least the coverages, included insureds, and policy limits provided at the end of the next preceding policy period"). See, also, R.C. 3937.31(B)(3) (policy modifications that do *not* effect a withdrawal or reduction in the initial coverage or policy limits are permitted). Second, the statute is intended to protect insureds from unilaterally being left without the protections that automobile insurance coverage affords by requiring that insurers provide an adequate method of notification when canceling insurance policies. See R.C. 3937.31(A) (grounds for cancellation limited), 3937.31(B)(4) (cancellation permitted at end of any mandatory period), 3937.32 (notice of cancellation required), and 3937.33 (procedures for cancellation).

{¶ 13} It is clear that the public policy of this state, as gleaned from the Acts of the General Assembly, is to ensure that all motorists maintain some form of liability coverage on motor vehicles operated within Ohio. R.C. 3937.31(A) is designed to further that policy. In *DeBose v. Travelers Ins. Cos.* (1983), 6 Ohio St.3d 65, 67, 6 OBR 108, 110, 451 N.E.2d 753, 755-756, this court stated that "[i]t is beyond reasonable dispute that R.C. 3937.30 *et seq.* are primarily designed to protect the public from the dangers which uninsured motorists pose. R.C. 3937.31(A) attempts to ameliorate this threat by mandating that insureds whose

policies have been in effect for less than two years receive notice of any planned cancellation of their policies in time for them to secure new coverage." In addition, the public policy is buttressed by R.C. Chapter 4509, Ohio's Financial Responsibility Act. Thus, restricting the guarantee period in R.C. 3937.31(A) solely to the first two years of initial coverage defeats, rather than advances, the laudatory objectives of the General Assembly.

{¶ 14} Accordingly, we hold that, pursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39. We further hold that the commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy. Pursuant to our decision in *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, the statutory law in effect on the date of issue of each *new* policy is the law to be applied.

{¶ 15} Finally, the guarantee period mandated by R.C. 3937.31(A) is not limited solely to the first two years following the initial institution of coverage. Rather, the statute applies to every new automobile insurance policy issued, regardless of the number of times the parties previously have contracted for motor vehicle insurance coverage.

{¶ 16} Applying the foregoing to the case at bar, the parties agree that the original issuance date of appellant's automobile liability insurance policy was December 12, 1983. Counting successive two-year policy periods from that date, appellant's last guaranteed policy period would have run from December 12, 1993 to December 12, 1995. Am.Sub.S.B. No. 20 was enacted on October 20, 1994, approximately fourteen months before the end of appellant's two-year guaranteed policy period. Therefore, those provisions of the statute intended to supersede our

decision in *Savoie*, 67 Ohio St.3d 500, 620 N.E.2d 809, could not have been incorporated into the contract of insurance until the mandatory policy period had expired on December 12, 1995 and a new guarantee period had begun.

{¶ 17} A final contention is made regarding our decision in *Ross, supra*, and our reliance therein on *Benson v. Rosler* (1985), 19 Ohio St.3d 41, 19 OBR 35, 482 N.E.2d 599. Appellee contends that our decisions in *Benson* and *Ross* resolve this matter in its favor. We disagree.

{¶ 18} In *Benson*, a majority of this court held that "statutes pertaining to a policy of insurance and its coverage, which are enacted after the policy's issuance, are incorporated into any *renewal* of such policy if the *renewal* represents a *new* contract of insurance separate from the initial policy." (Emphasis added.) *Id.* at 44, 19 OBR at 37, 482 N.E.2d at 602, citing 12 Appleman, Insurance Law and Practice (1981) 166, Section 7041. A majority of the court in *Benson* went on to determine, notwithstanding the provisions of R.C. 3937.31(A), that the policies at issue therein, written for six-month durations, were considered new polices at their renewal. *Id.* Given the language of R.C. 3937.31(A), that determination in *Benson* is confusing at best and flat-out wrong at its worst. When we relied on *Benson* in *Ross*, we did so without consideration of the R.C. 3937.31(A) question which, of course, was not before us in *Ross*. *Ross*, 82 Ohio St.3d at 288-289, 695 N.E.2d at 737.

{¶ 19} We now believe that in *Benson* the majority misconstrued R.C. 3937.31(A). The discussion of R.C. 3937.31(A) in the *Benson* court's *per curiam* opinion could be described as cursory at best. The *Benson* majority failed to consider the statute's proper application, as well as the public policy behind the enactment, to contracts of automobile liability insurance issued in this state. In effect, the majority's final determination in *Benson* renders the language of R.C. 3937.31(A) meaningless.

**{¶ 20}** Moreover, *Benson*, as well as *Ross*, could not be dispositive of the matter before us without also considering the mandatory requirements of R.C. 3937.18(A). Pursuant to R.C. 3937.18(A), insurers are required to offer uninsured and underinsured motorist coverage with every motor vehicle policy delivered or issued in this state. Failure to do so results in the insured's acquiring such coverage by operation of law. *Gyori v. Johnston Coca-Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 567, 669 N.E.2d 824, 826. Were we to adopt appellee's argument, insurance companies would have the unenviable task of complying with R.C. 3937.18(A) every time a renewal constituted a new policy of insurance.

**{¶ 21}** Thus, we conclude that certain aspects of the court's decision in *Benson* are contradictory to the language and statutory purpose of R.C. 3937.31(A). We, therefore, limit the holding of *Benson* and reject those portions of the *Benson* opinion to the extent that they conflict with R.C. 3937.31(A).

**{¶ 22}** Accordingly, we reverse the judgment of the court of appeals and remand this matter to the trial court for final determination consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., dissent.

————————————

**COOK, J., dissenting.**

**{¶ 23}** Because I would adhere to this court's decision in *Benson v. Rosler* (1985), 19 Ohio St.3d 41, 19 OBR 35, 482 N.E.2d 599, I respectfully dissent.

**{¶ 24}** The majority's decision today interprets R.C. 3937.31(A) as mandating successive two-year periods of guaranteed coverage rather than one such initial period. From this conclusion, the majority then determines that *Benson* is no longer a correct statement of the law, and that only at the beginning of a two-year

mandatory coverage period may new contracts of insurance exist. These propositions, however, do not follow from the majority's initial conclusion concerning R.C. 3937.31(A), and are therefore adopted without analytical support.

{¶ 25} To appreciate the flaw in the majority's analysis, it is useful to view it against the background of the law as it existed prior to today. In *Benson* this court held that even if a renewal occurred within a mandatory two-year coverage period under R.C. 3937.31(A), it could still be considered a "new contract" where the terms of the policy supported that characterization. In such instances, the law in effect on the date of the renewal applied.

{¶ 26} The majority now announces that the *Benson* court misconstrued this issue and that we are to look only to the beginning of each R.C. 3937.31(A) two-year period for the "new contract" date. The majority apparently believes that its conclusion concerning mandatory periods compels the proposition that *renewals within a mandatory period* may not be "new contracts." It is at this point that the logic of the majority's analysis breaks down.

{¶ 27} While the majority attempts to undercut the *Benson* decision based upon its interpretation that R.C. 3937.31(A) contemplates successive mandatory periods, in fact, that interpretation does not contradict the holding in *Benson*. *Benson* held that a renewal could be a new contract *even if it occurred within a mandatory two-year period*. Even accepting the majority's expansion of R.C. 3937.31(A) to require successive two-year mandatory periods, the *Benson* court's analysis applies equally well to the first mandatory period as to later ones. In other words, it makes no difference during *which* mandatory period the renewal occurs— the rationale that a renewal may be a new contract even during such periods remains the same. Thus, the majority's citation to R.C. 3937.31(A) as the reason for reversing *Benson* is plainly insufficient.

{¶ 28} In fact, by concentrating its analysis upon the number of mandatory coverage periods required under R.C. 3937.31(A), the majority actually misses the

crucial issue in this controversy. What it should have analyzed is whether a renewal may be considered a "new contract" if it occurs within a mandatory two-year period. It is that statement that needed to be countered in order to overrule or limit *Benson*.

**{¶ 29}** Had the majority analyzed this issue, however, it would have found little, if any, support for its elimination of *Benson* as a valid statement of law on this point. First, it is "a basic tenet of insurance law that each time an insurance contract is renewed, a separate and distinct policy comes into existence." *Hercules Bumpers, Inc. v. First State Ins. Co*. (C.A.11, 1989), 863 F.2d 839, 842, citing 13 Appleman, Insurance Law and Practice (Rev.Ed.1976), Section 7648; see, also, *Moses v. Am. Home Assur. Co*. (Ala.1979), 376 So.2d 656, 658. Based upon that premise and principles of contract law, the *Benson* court appropriately reasoned that, where a policy is written for a specific term and would expire unless the insured acted upon the renewal offer by paying a premium, the language of the policy should be given effect and the renewal considered a new contract.

**{¶ 30}** Moreover, as the *Benson* court understood, the text of R.C. 3937.31(A) contains no justification for a departure from these basic insurance and contract concepts. That statute includes neither a mandate nor even a suggestion concerning what is and is not a new contract. Regardless of the number of two-year periods it requires, the statute concerns itself only with the *availability of coverage* during those years. Had the General Assembly meant to convert all insurance policies into two-year continuing contracts, thereby prohibiting any characterization of renewals as new contracts despite their very terms, certainly it would have used more specific terms, as it has elsewhere in the Revised Code. See, *e.g*., R.C. 3319.08 (concerning continuing contracts for teachers). This is particularly true when to do so would depart from well-settled insurance concepts. At the very least, the General Assembly would have eliminated from R.C. 3937.31(A), as superfluous, the concept of renewals within a mandatory term.

Thus, the majority in effect adds provisions to the statute in order to support its determination—a determination unfounded based upon the text of the statute.

{¶ 31} I also disagree with the majority's assertion that *Benson's* continued validity would circumvent the purpose of R.C. 3937.31(A). According to the majority's own reasoning, R.C. 3937.31(A) was enacted to further the public policy of ensuring that all motorists maintain some form of liability coverage on motor vehicles in Ohio. The General Assembly achieved this goal by imposing upon insurers various cancellation restrictions. Contrary to the majority's view, this purpose is in no way compromised by adherence to *Benson* and established concepts of insurance and contract law. The proposition that a renewal may be considered a new contract quite plainly has no effect upon the statute's *continuation of insurance* coverage provision.

{¶ 32} Finally, I disagree with the majority's visions of chaos concerning compliance with the uninsured and underinsured offering requirements were we to follow *Benson*. The majority specifically warns: "Were we to adopt appellee's argument, insurance companies would have the unenviable task of complying with R.C. 3937.18(A) every time a renewal constituted a new policy of insurance." The statutory language of R.C. 3937.18(C), however, specifically excepts renewals and replacement contracts from the offering requirement of R.C. 3937.18(A). In those instances, the insured's prior choice controls unless the insured expressly requests such coverage. See, *e.g.*, *Remington v. Triplett* (June 30, 1999), Fairfield App. No. 98CA00070, unreported, 1999 WL 547815; *Savage v. Shelby Ins. Group* (July 22, 1998), Crawford App. No. 3-98-03, unreported, 1998 WL 409146. Thus, no infeasible compliance task would await insurance companies were we to simply follow *Benson* and continue to hold that the terms of the policy itself, rather than a statute enacted for a different purpose, control whether a renewal constitutes a new contract.

12

{¶ 33} Given that no valid support exists to overturn or limit *Benson*, I believe that it should remain the law on this issue and should control the outcome of this case. Accordingly, based upon *Benson*, I would conclude that the terms of the policy at issue dictate whether the renewal constitutes a new contract, regardless of whether that renewal occurred within a mandatory guarantee period under R.C. 3937.31(A).

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

———————————

**LUNDBERG STRATTON, J., dissenting.**

{¶ 34} I respectfully dissent because I believe the majority reads more into R.C. 3937.31 than was intended by the General Assembly. Although the statute is not a model of clarity, I believe that the majority's interpretation creates more confusion, rather than providing clarification.

{¶ 35} R.C. 3937.31(A) provides that "[e]very automobile insurance policy shall be issued for a policy period of not less than two years *or guaranteed renewable for successive policy periods totaling not less than two years."* (Emphasis added.) I believe that this language simply means that an insurer must provide coverage for a minimum of two years without a reduction in benefits. I agree with the analysis by this court in *Benson v. Rosler* (1985), 19 Ohio St.3d 41, 19 OBR 35, 482 N.E.2d 599. The *Benson* court reasoned that statutes enacted after an insurance policy is issued "are incorporated into any renewal of such policy if the renewal represents a new contract of insurance separate from the initial policy." *Id.* at 44, 19 OBR at 37, 482 N.E.2d at 602.

{¶ 36} This approach would simplify an insured's review of the applicable law when a claim is made. An insured or his or her attorney need only determine the initial term and contract length of the policy. Any renewal of the policy would incorporate current law.

13

**{¶ 37}** In addition, the *Benson* court recognized that R.C. 3937.31 provides that an insurance company may issue a policy for a period of six months with the option to renew for an additional six-month period. When a policy is written for a specific period, it may be considered a term policy, not a continuing policy, and each renewal policy may be considered a new contract.

**{¶ 38}** I agree with the appellee that *Benson* controls and that a renewal policy may constitute a new *contract* that simply *renews* the terms of the prior contract for a subsequent period. The insurance company agrees to provide insurance coverage in exchange for the insured's payment of a premium for the coverage. R.C. 3937.31(A) merely requires the insurer to guarantee the same coverage to an insured for the first two years. The statute does *not* require the insurer to issue a *two-year contract*.

**{¶ 39}** There is nothing in the language of R.C. 3937.31 that prohibits successive term insurance policies. To read such prohibitive language into R.C. 3937.31 renders the phrase "or guaranteed renewable for successive policy periods totaling not less than two years" meaningless. The majority now mandates automatic two-year contracts and prohibits successive term contracts, a result that is clearly not evident in a plain reading of the statute. Now that each insurance contract extends for a minimum of two years, many insureds may be precluded from the benefit of any change in the law that may occur during that two-year period.

**{¶ 40}** Insureds must now determine when each two-year policy commenced, a difficult task, especially for those who have maintained a long-term contractual relationship with one insurer. Once again, the majority injects chaos into the insurance field.

_____

14