OPINION
{¶ 1} Plaintiffs-appellants, Gary and Linda Burton ("the Burtons"), appeal the decision of the Butler County Court of Common Pleas granting summary judgment to Defendant-Appellee, Allstate Insurance Company ("Allstate").
 {¶ 2} The Burtons are the parents of Anthony R. Bustle. Bustle died as a result of the negligence of James C. Haynes in an automobile accident on March 31, 2002. Haynes was insured by Progressive Insurance with a policy having a liability coverage limit of $25,000.
 {¶ 3} On the date of the accident, the Burtons were insured under an automobile insurance policy issued by Allstate. The policy initially went into effect December 6, 1997, and renewed thereafter on December 6, 1999, and December 6, 2001, pursuant to R.C. 3937.31. The policy provided liability coverage limits of $300,000 for each person, $500,000 for each occurrence, and uninsured/underinsured motorist ("UM/UIM") coverage of $25,000 for each person and $50,000 for each occurrence.
 {¶ 4} After the limits of Haynes' liability policy were exhausted, the Burtons made a demand on Allstate for payment of underinsured motorist coverage in excess of the $25,000 per person coverage stated in their policy. On July 9, 2003, the Burtons filed a declaratory judgment action in which they asked the trial court to declare all of their rights under their policy.
 {¶ 5} On May 28, 2004, Allstate moved for summary judgment. In light of the declared UM/UIM coverage limit of $25,000 per person stated in the Burtons' policy, Allstate asked the trial court to find that its maximum exposure for claims made by the Burtons under the underinsured provision of their policy is $25,000.
 {¶ 6} The trial court entered summary judgment in favor of Allstate on August 30, 2004, and this appeal followed, in which the Burtons raise the following single assignment of error:
 {¶ 7} "THE COURT ERRED IN GRANTING JUDGMENT TO THE DEFENDANT."
 {¶ 8} Summary judgment is proper where (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only come to a conclusion adverse to the party against whom the motion is made, construing the evidence most strongly in that party's favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. We review the granting of a summary judgment motion de novo. Burgess v. Tackas (1998),125 Ohio App.3d 294, 296.
 {¶ 9} The Burtons first contend that the trial court erred in granting summary judgment to Allstate because there is a genuine issue of fact as to whether they effectively rejected UM/UIM coverage in an amount equal to the liability coverage of their policy. When a legally effective rejection of UM/UIM coverage does not take place, by operation of law, the Burtons argue, the UM/UIM coverage limits of a policy are equal to its liability limits.
 {¶ 10} In support, the Burtons rely on Linko v. Indemnity Ins. Co. ofNorth America, 90 Ohio St. 3d. 445, 2000-Ohio-92. In Linko, the court restated a previously well-settled rule in Ohio that UM/UIM coverage can be excluded from an insurance policy only by a meaningful offer and written rejection of that provision by the insured. Id. at 449. See, also, Gyori v. Coca-Cola Bottling Group, Inc, 76 Ohio St. 3d 565,1996-Ohio-358. Absent a meaningful offer and written rejection, UM/UIM coverage is deemed equal to the liability limits of a policy. SeeSchumacher v. Kreiner, 88 Ohio St.3d 358, 2000-Ohio-344 (holding under former R.C. 3937.18 that the failure of an insurance company to offer UM/UIM coverage results in an insured acquiring such coverage in an amount equal to the liability coverage by operation of law).
 {¶ 11} Allstate counters by arguing that recent amendments to R.C.3937.18 eliminated the requirement that an insurance company offer UM/UIM coverage, and that the recent changes to the law became a part of the Burtons' policy when it renewed on December 6, 2001. We agree.
 {¶ 12} On October 31, 2001, S.B. 97 went into effect, amending R.C.3937.18. With respect to UM/UIM coverage, R.C. 3937.18 now states that any insurance policy that insures against loss "arising out of the ownership, maintenance, or use of a motor vehicle, may, but is notrequired to, include uninsured motorist coverage, underinsured motorist coverage," or both. (Emphasis added.) Thus, insurance companies that issue or renew policies after October 31, 2001, are no longer required to offer, and obtain a written rejection of, UM/UIM coverage. See, also, Section 3 of S.B. 97, stating that in amending R.C. 3937.18, it was the intent of the General Assembly to eliminate the requirement of a mandatory offer of UM/UIM coverage, and to supersede the holdings inLinko, Gyori, Schumacher, and their progeny.
 {¶ 13} The statutory law in effect at the time an insurance policy is issued or renewed defines the scope of underinsured motorist coverage in the policy. Wolfe v. Wolfe, 88 Ohio St.3d 246, 2000-Ohio-322; Ross v.Farmers Ins. Group of Cos. 82 Ohio St.3d 281, 1998-Ohio-381. The Burtons' policy renewed on December 6, 1999, and December 6, 2001, pursuant to R.C. 3937.31, which provides that auto insurance policies must remain in effect for a minimum of two years, and the commencement of each renewal period creates a new policy. See Wolfe, 88 Ohio St.3d at 250.
 {¶ 14} When the Burtons' policy renewed on December 6, 2001, R.C.3937.18 did not include a requirement that an insurer offer, and obtain a written rejection of, UM/UIM coverage. Consequently, the trial court correctly concluded that Allstate's maximum exposure for claims made under the UM/UIM provision of the Burtons' policy is the policy's declared limit of $25,000.
 {¶ 15} The Burtons further contend that even if the current version of R.C. 3937.18 applies to their policy, they were not properly notified of a change in UM/UIM coverage when the policy renewed on December 6, 2001. Absent proper notice of changes in terms or conditions of an insurance contract, an insured may assume that the terms of a renewal policy are identical to the policy originally negotiated. See J.R. Roberts Sonv. National Ins. Co. (1914), 2 Ohio App. 463. See, also, NationwideMutual Ins. Co. v. Marsh (1984), 15 Ohio St.3d 107 (holding that an insurance policy is a contract, and in accordance with contract principles, its terms must be mutually agreed-upon to be effective).
 {¶ 16} The Burtons' further contention is not well-taken for two reasons. First, "[a]n insurer has no duty to inform an insured about changes in insurance laws." Ryan v. The Hartford Co. (June 25, 2001), Butler App. No. CA2000-10-210. Second, there was no change in the UM/UIM coverage limits of the renewal policy. The Burtons concede that the policy originally issued to them on December 6, 1997 included UM/UIM coverage in the amounts of $25,000 per person and $50,000 per occurrence. These amounts are identical to those declared in the renewal policy that went into effect on December 6, 2001. Thus, notice of a change in UM/UIM coverage was not required.
 {¶ 17} Finally, the Burtons contend that Allstate's standard operating procedure is to obtain a signed rejection of UM/UIM coverage and that Allstate failed to follow that procedure when it issued a policy to them in December 1997. Allstate is bound by its own internal methods of rejection, the Burtons argue, and a failure to follow that method should result in a finding that the UM/UIM coverage in their policy is equal to its liability coverage.
 {¶ 18} Even assuming Allstate did fail to follow its own internal procedure for obtaining a rejection of UM/UIM coverage, the Burtons cite to no authority for the proposition that an insurance company is in any way liable for a failure to follow its own procedures. Consequently, the Burtons' final contention is also not well-taken.
 {¶ 19} The Burtons' sole assignment of error is overruled.
 {¶ 20} Judgment affirmed.
Young and Bressler, JJ., concur.