ADVENT, Exr., Appellant,

v.

ALLSTATE INSURANCE COMPANY et al., Appellees.

[Cite as *Advent v. Allstate Ins. Co.*, 169 Ohio App.3d 318, 2006-Ohio-5522.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–103.

Decided Oct. 24, 2006.

John M. Gonzales, L.L.C., and John M. Gonzales, for appellant.

Lane, Alton & Horst, L.L.C., Rick E. Marsh, and Monica L. Waller, for appellee Allstate Insurance Company.

FRENCH, Judge.

{¶ 1} Plaintiff-appellant, Jack R. Advent, as executor of the estate of Valijean D. Advent, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Allstate Insurance Company ("Allstate"), and denying appellant's motion for partial summary judgment. For the following reasons, we affirm the trial court's judgment.

{¶ 2} This action arises out of an automobile accident that occurred on September 28, 2002, as a result of the negligence of Scott D. Rude. Valijean D. Advent died from injuries she sustained in the accident and is survived by her husband, appellant Jack Advent, and her children, Laura and Ryan. As executor of his late wife's estate, appellant settled the estate's claims against Rude and Rude's insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), for the $100,000 bodily injury limit of Rude's insurance policy, while preserving the right to pursue claims for uninsured/underinsured-motorist ("UM/UIM") coverage from Allstate, the Advents' insurer.

{¶ 3} At the time of the accident, appellant and his wife were the named insureds on an Allstate insurance policy, which provided liability coverage up to

$300,000 per person/$500,000 per occurrence. According to its declarations page, the Allstate policy provided UM/UIM coverage up to $50,000 per person/$100,000 per accident.

{¶ 4} On September 23, 2004, appellant filed an action for wrongful death and declaratory judgment against Allstate and Dennis O. Norton, appellant's insurance agent, in the Franklin County Court of Common Pleas.[1] In his claims against Allstate, appellant seeks to recover $200,000 in UM/UIM coverage under the Allstate policy. Appellant contends that UM/UIM coverage arose by operation of law under the Allstate policy in an amount equivalent to the policy's liability limit of $300,000 per person/$500,000 per occurrence. After setting off the $100,000 paid by State Farm, appellant contends that the estate is entitled to recover $200,000 under the Allstate policy. Allstate has admitted that the estate sustained compensatory damages in excess of $300,000.

{¶ 5} On June 28, 2005, Allstate filed a motion for summary judgment, arguing that appellant was not entitled to recover UM/UIM benefits under the Allstate policy because Rude's liability coverage exceeded the Allstate policy's UM/UIM limits. Allstate also argued that because the 2001 Am.Sub.S.B. No. 97 version of R.C. 3937.18(A) applies, no additional UM/UIM coverage arises by operation of law under the Allstate policy. On August 8, 2005, appellant filed a memorandum opposing Allstate's motion for summary judgment and a cross-motion for partial summary judgment. Allstate filed a reply memorandum in support of its motion on August 12, 2005. On November 15, 2005, the trial court issued a decision granting Allstate's motion for summary judgment and denying appellant's motion for partial summary judgment. The trial court entered judgment in accordance with its November 15, 2005 decision on January 4, 2006, and appellant filed a timely notice of appeal.

{¶ 6} Appellant raises a single assignment of error for our consideration:

The trial court erred in granting summary judgment in favor of appellee Allstate and denying appellant's motion for summary judgment.

{¶ 7} Appellate review of summary judgments is de novo. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765; *Brown* at 711, 622 N.E.2d 1153.

---

1. Appellant's claim against defendant Norton was the subject of a separate appeal, *Advent v. Allstate Ins. Co.*, Franklin App. No. 05AP–1092, 2006-Ohio-2743, 2006 WL 1495066.

{¶ 8} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 9} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. Id. at 293, 662 N.E.2d 264. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, quoting *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 433 N.E.2d 615.

{¶ 10} The parties' dispute over the amount of UM/UIM coverage afforded by the Allstate policy stems from their disagreement over which version of the Ohio uninsured-motorist statute, R.C. 3937.18, governs the scope of the policy. "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, syllabus. However, as the Third District Court of Appeals has aptly recognized, "[t]his seemingly simple concept can become problematic because Ohio statutory law requires insurance carriers to give insureds a two-year guaranteed coverage period. R.C. 3937.31(A)." *McDaniel v. Rollins*, Allen App. No. 1–04–82, 2005-Ohio-3079, 2005 WL 1421754, at ¶ 21.

{¶ 11} Allstate originally issued the Advents' policy on March 12, 1989, and the parties continually renewed the policy through the time of the accident. Pursuant to R.C. 3937.31(A), "[e]very automobile insurance policy shall be issued for a period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years." In *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 250, 725 N.E.2d 261, the Ohio Supreme Court addressed the effect of R.C.

3937.31(A), holding that the commencement of each two-year guarantee period brings into existence a new contract of insurance, whether the policy is categorized as a new policy or a renewal, and that R.C. 3937.31 applies "regardless of the number of times the parties previously have contracted for motor vehicle insurance coverage." The statutory law in effect as of the issuance date of each new policy governs the policy. Id. "Under *Wolfe*, insurance policies could * * * not be altered during the guaranteed two-year period 'except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39.' " *Arn v. McLean*, 159 Ohio App.3d 662, 2005-Ohio-654, 825 N.E.2d 181, at ¶ 15; *Wolfe* at 250, 725 N.E.2d 261. Consequently, under *Wolfe*, an insurer could incorporate statutory changes into an insurance policy only when a new two-year guarantee period began. *Wolfe* at 250–251, 725 N.E.2d 261.

{¶ 12} In *Wolfe*, the Ohio Supreme Court looked to the original issuance date of the appellants' automobile insurance policy and counted successive two-year periods from that date to determine the last guarantee period. Applying that method here, and counting successive two-year periods from the original issuance date of March 12, 1989, the last two-year guarantee period prior to the accident ran from March 12, 2001 until March 12, 2003. The statutory law in effect on March 12, 2001, included the statutory changes affected by 2000 Sub.S.B. No. 267, effective September 21, 2000. As the statutory law in effect at the beginning of the relevant guarantee period, the S.B. No. 267 versions of the insurance statutes govern the scope of the Allstate policy.

{¶ 13} Enacted after *Wolfe*, but before the beginning of the relevant guarantee period, S.B. No. 267 did not change the requirement of a two-year guarantee period mandated by R.C. 3937.31(A). However, as part of S.B. No. 267, the General Assembly added subsection (E) to R.C. 3937.31, which provides as follows:

> (E) Nothing in this section prohibits an insurer from incorporating into a policy any changes that are permitted or required by this section or other sections of the Revised Code at the beginning of any policy period within the two-year period set forth in division (A) of this section.

Section 5 of S.B. No. 267 read:

> It is the intent of the General Assembly in amending section 3937.31 of the Revised Code to make clear that an insurer may modify the terms and conditions of any automobile insurance policy to incorporate changes that are permitted or required by that section and other sections of the Revised Code at the beginning of any policy period within the two-year period set forth in division (A) of that section.

Under R.C. 3937.31(E), when a policy is "guaranteed renewable for successive policy periods totaling not less than two years," as permitted by R.C. 3937.31(A), an insurer may incorporate changes permitted by the Ohio Revised Code at the beginning of any policy period. Thus, to the extent that it held that insurance policies could not be altered during the two-year guarantee period except by agreement of the parties, R.C. 3937.31(E) abrogated *Wolfe.* See *Arn; McDaniel* at ¶ 12, fn. 1.

{¶ 14} The S.B. No. 267 version of R.C. 3937.18 required automobile insurers to offer UM/UIM coverage in an amount equal to the liability limits under any automobile insurance policy written or delivered in Ohio, and, if an insurer failed to offer UM/UIM coverage, such coverage arose by operation of law in the amount of the policy's liability coverage. *Hicks–Malak v. Cincinnati Ins. Cos.,* Lucas App. No. L–04–1272, 2005-Ohio-2745, 2005 WL 1314858, at ¶ 11, citing *Gyori v. Johnston Coca–Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 568, 669 N.E.2d 824. Although the Allstate policy declarations state that UM/UIM coverage is provided with limits of $50,000 per person/$100,000 per accident, appellant argues that Allstate failed to offer UM/UIM coverage in an amount equal to the policy's liability limits and that Allstate cannot produce a written reduction of limits for UM/UIM coverage. Consequently, appellant argues that UM/UIM coverage arises under the Allstate policy by operation of law in the amount of $300,000 per person/$500,000 per accident, equivalent to the policy's liability coverage.

{¶ 15} Although S.B. No. 267 was in effect at the beginning of the relevant guarantee period, the General Assembly, during that guarantee period, again amended R.C. 3937.18 through S.B. No. 97, effective October 31, 2001. Allstate argues that R.C. 3937.31(E), which was in effect at the beginning of the guarantee period, permitted incorporation of statutory changes at the end of any policy period within the two-year guarantee period and that Allstate incorporated the S.B. No. 97 version of R.C. 3937.18(A) into the policy prior to the accident. As amended by S.B. No. 97, R.C. 3937.18(A) provides:

> Any policy of insurance delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state that insures against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, may, but is not required to, include uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages.

In S.B. No. 97, the General Assembly expressed its intent to:

> (1) Eliminate any requirement of the mandatory offer of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages;

(2) Eliminate the possibility of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages being implied as a matter of law in any insurance policy;

\* \* \*

(4) Eliminate any requirement of a written offer, selection, or rejection form for uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages from any transaction for an insurance policy[.]

Allstate contends that under the S.B. No. 97 version of R.C. 3937.18(A), no additional UM/UIM coverage may be imposed by operation of law on the Advents' policy.

{¶ 16} Simply stated, the essence of the parties' dispute becomes whether the S.B. No. 97 amendments to R.C. 3937.18(A) applied to the Allstate policy at the time of the accident. Two Ohio appellate districts have considered scenarios, like the one presently before us, involving a claim for UIM coverage arising out of an accident that occurred after the effective date of S.B. No. 97, where the insurance policy at issue had a guarantee period that began after the effective date of S.B. No. 267, but before the effective date of S.B. No. 97. The Second and Eighth District Courts of Appeals have reached differing conclusions as to whether the S.B. No. 97 changes to R.C. 3937.18 can be incorporated into an insurance policy during a guarantee period that began between the effective dates of S.B. Nos. 267 and 97. See *Arn; Storer v. Sharp,* Cuyahoga App. No. 86525, 2006-Ohio-1577, 2006 WL 832458.

{¶ 17} In *Arn,* the relevant guarantee period began on February 21, 2001, at which time the S.B. No. 267 versions of R.C. 3937.18 and 3937.31, including R.C. 3937.31(E), were in effect. During the guarantee period, the *Arn* policy renewed on February 22, 2002, after the effective date of S.B. No. 97. As in this case, the parties disagreed as to whether the S.B. No. 97 changes applied to the policy at the time of the accident. The Second District held that because R.C. 3937.31(E) was in effect at the beginning of the guarantee period, the insurer "was free to modify the policy or to incorporate any changes that were then permitted or authorized by law" when the policy renewed on February 22, 2002. *Arn* at ¶ 24. Accordingly, the court held that S.B. No. 97 governed the parties' rights under the policy.

{¶ 18} In *Storer,* the relevant guarantee period began on September 18, 2001, at which time the S.B. No. 267 versions of R.C. 3937.18 and 3937.31 were in effect. Like the policy in *Arn,* the *Storer* policy renewed after the effective date of S.B. No. 97. Unlike the Second District, the Eighth District Court of Appeals rejected the argument that the insurer could incorporate the S.B. No. 97

amendments into the policy in a mid-guarantee renewal, despite R.C. 3937.31(E). The court stated:

> As noted by this court in *Young v. Cincinnati Ins. Co.*, [Cuyahoga] App. No. 82395, 2004-Ohio-54[, 2004 WL 35770], a policy cannot be amended to reflect statutory changes that occur during the guaranteed two-year period; an amendment does not take effect until the expiration of that two-year period. R.C. 3937.31(A); *Shay v. Shay*, [164 Ohio App.3d 518], 2005-Ohio-5874[, 843 N.E.2d 194]; *Slone v. Allstate Ins. Co.*, Richland App. No. 2004CA0021, 2004-Ohio-3990[, 2004 WL 1699899].

Id. at ¶ 15. We disagree with the Eighth District's analysis in *Storer.*

{¶ 19} The cases upon which the Eighth District based its conclusion that a policy cannot be amended to reflect statutory changes during a guarantee period involved insurance policies with guarantee periods that began prior to the effective date of S.B. No. 267 and, thus, prior to the enactment of R.C. 3937.31(E). In *Young v. Cincinnati Ins. Co.*, Cuyahoga App. No. 82395, 2004-Ohio-54, 2004 WL 35770; *Shay v. Shay*, 164 Ohio App.3d 518, 2005-Ohio-5874, 843 N.E.2d 194; and *Slone v. Allstate Ins. Co.*, Richland App. No. 2004CA0021, 2004-Ohio-3990, 2004 WL 1699899, the guarantee periods at issue began prior to the effective date of S.B. No. 267 when, under *Wolfe*, an insurer could incorporate statutory changes into an insurance policy only when a new two-year guarantee period began. Accordingly, those courts properly concluded that the insurers could not incorporate the S.B. No. 267 amendments into the policies in the middle of a statutorily mandated guarantee period. Such cases are inapposite to this case because here, the guarantee period of the Allstate policy began after the effective date of S.B. No. 267 and the enactment of R.C. 3937.31(E), which expressly permits an insurer to incorporate changes into policies at the beginning of a policy period within the guarantee period. Accordingly, we find the Eighth District's reliance on such cases in *Storer* misplaced. We further find the Second District's analysis in *Arn* sound.

{¶ 20} Appellant acknowledges that R.C. 3937.31(E) permits insurers to incorporate policy changes at the beginning of a policy period within a two-year guarantee period, but argues that the Allstate policy was issued for two-year policy periods rather than for shorter, successively renewable policy periods. Appellant contends that the policy period of the Allstate policy was the same as the guarantee period, ending March 12, 2003. Thus, appellant argues that Allstate could not incorporate the S.B. No. 97 changes into the policy until the beginning of the next two-year policy and guarantee period. Allstate, on the other hand, argues that it issued the Advents' policy for six-month policy periods, guaranteed renewable for successive periods totaling two years and that during the applicable guarantee period, the policy renewed on September 12, 2001,

March 12, 2002, and September 12, 2002. Allstate contends that it incorporated the S.B. No. 97 changes into the policy as of the March 12, 2002 renewal.

{¶ 21} To determine the policy period for the Allstate policy, we turn to the policy itself. Appellant argues that Allstate issued its policy for two-year policy periods based on the policy provision entitled "Guarantee Period," which provides:

> A guarantee period required by Ohio law begins on the 90th day after the original effective date of the policy, and continues for two years from that original effective date. When this guarantee period expires, a new guarantee period will commence for another two year period unless we mail notice that we don't intend to continue the policy. Each guarantee period begins after the expiration of the prior guarantee period.

Although the Allstate period clearly provides for a two-year guarantee policy, as required by R.C. 3937.31(A), the policy does not use the terms "guarantee period" and "policy period" interchangeably. Rather, the policy defines the policy period in a provision entitled "When And Where The Policy Applies," which provides:

> Your policy applies only during the policy period. During this time, it applies to covered losses to the insured auto, accidents, and occurrences within the United States, its territories or possessions; Canada, and between their ports. *The policy period is shown on the Policy Declarations.*

(Emphasis added.)

{¶ 22} Allstate issued Renewal Auto Policy Declarations every six months. The Renewal Auto Policy Declarations issued at the beginning of the March 12, 2001 guarantee period identify the "policy period" as March 12, 2001, to September 12, 2001, at 12:01 a.m. standard time. The record contains additional Renewal Auto Policy Declarations listing policy periods of September 12, 2001, to March 12, 2002, March 12, 2002, to September 12, 2002, and September 12, 2002, to March 12, 2003.

{¶ 23} Despite policy language defining the policy period as the period set forth in the declarations, each of which identifies a six-month policy period, appellant argues that a six-month policy period is in direct contradiction to the specific language of the "Guarantee Period." Alternatively, appellant argues that the Allstate policy is ambiguous regarding the length of the policy period. We disagree. The "Guarantee Period" provision in the Allstate policy simply incorporates the guarantee period required by R.C. 3937.31(A), which permits insurers to issue a policy either for a two-year policy period or for lesser policy periods guaranteed renewable for at least two years. Nothing in R.C. 3937.31(A) requires insurers to issue policies for two-year policy periods, and nothing in the Allstate policy's "Guarantee Period" provision suggests that the Allstate policy

has a two-year policy period. Rather, the Allstate policy expressly provides that its policy period is shown on the policy declarations, each of which identifies a six-month policy period. Thus, upon review, we conclude that the Allstate policy was issued for successive six-month policy periods within each two-year guarantee period. Accordingly, pursuant to R.C. 3937.31(E), Allstate was permitted to incorporate the changes brought about by S.B. No. 97 into the policy at the beginning of any six-month policy period following the effective date of S.B. No. 97.

{¶ 24} Appellant next argues that even if the Allstate policy was issued for six-month periods, Allstate took no action to incorporate the S.B. No. 97 version of R.C. 3937.18 into the policy. Appellant contends that the incorporation of a statutory change into a policy prior to the expiration of a two-year guarantee period may only be accomplished by a policy endorsement and that Allstate failed to issue a policy endorsement incorporating the S.B. No. 97 changes. Allstate, on the other hand, argues that the "Important Notice" sent to the Advents prior to the March 12, 2002 renewal was sufficient to incorporate the S.B. No. 97 changes into the policy. The notice stated:

We'd like to let you know that we've changed the process for selecting and making changes to Uninsured Motorists Insurance for Bodily Injury and Uninsured Motorists Insurance—Property Damage.

Effective immediately, you can add or remove Uninsured Motorists Insurance for Bodily Injury and Uninsured Motorists Insurance—Property Damage and increase or decrease your limits under Uninsured Motorists Insurance for Bodily Injury by simply calling your Allstate representative. There will be no forms to sign.

Please refer to the enclosed Policy Declarations to determine if your policy currently has Uninsured Motorists Insurance for Bodily Injury and Uninsured Motorists Insurance—Property Damage.

If Uninsured Motorists Insurance for Bodily Injury or Uninsured Motorists Insurance—Property Damage is not included in your policy and you would like to purchase it, or if you would like to increase or decrease the Uninsured Motorists Insurance for Bodily Injury limits shown on the Policy Declarations, please feel free to contact your agent or the Allstate Customer Information Center at 1–800–ALLSTATE (1–800–255–7828).

We also note that, under the heading "Important Payment and Coverage Information," the Renewal Policy Declarations for the policy period from March 12, 2002, to September 12, 2002, explicitly informed the Advents that their chosen UM/UIM limits were less than their liability coverage limits and instructed them to contact their agent or Allstate if they wished to increase their UM/UIM limits.

{¶ 25} Appellant argues that the Notice is insufficient to incorporate the S.B. No. 97 changes into the Allstate policy because the policy itself expressly requires that any change to the policy that restricts or reduces coverage be accomplished by policy endorsement. The Allstate policy provision entitled "Coverage Changes" provides:

> When Allstate broadens a coverage during the policy period without additional charge, you have the new feature if you have the coverage to which it applies. The new feature applies on the date the coverage change is effective in your state. Otherwise, the policy can be changed only by endorsement. Any change in your coverage will be made using the rules, rates and forms in effect, and on file if required, for our use in your state.

Appellant contends that the incorporation of the S.B. No. 97 changes into the Allstate policy constituted a change to the policy resulting in a reduction of coverage. Appellant claims that prior to S.B. No. 97, UM/UIM coverage would have arisen by operation of law with limits of $300,000 per person/$500,000 per accident, whereas, under S.B. No. 97, UM/UIM coverage is limited to $50,000 per person/$100,000 per accident, as set forth in the policy declarations.

{¶ 26} We reject appellant's position that S.B. No. 97 could be incorporated into the Allstate policy only by endorsement. The incorporation of the S.B. No. 97 changes to R.C. 3937.18 into the Allstate policy did not change the policy itself. From its inception, the terms of the Allstate policy provided for UM/UIM coverage with limits of $50,000 per person/$100,000 per accident. In his deposition, appellant admitted that prior to the accident, he understood that the Allstate policy provided UM/UIM coverage with lower limits than the policy's liability coverage. It was only by operation of law that courts could, under the prior versions of R.C. 3937.18, impose higher UM/UIM coverage limits on the Allstate policy. The incorporation of the S.B. No. 97 version of R.C. 3937.18 simply validated the coverage that the policy had always purported to provide.

{¶ 27} The Twelfth District Court of Appeals recently rejected an argument similar to that which appellant makes here. In *Burton v. Allstate Ins. Co.*, Butler App. No. CA2004–10–247, 2005-Ohio-5291, 2005 WL 2416726, the appellants sought UM/UIM coverage after a March 31, 2002 automobile accident. The insurance policy at issue in *Burton* was originally issued on December 6, 1997, and was renewed on December 6, 1999, and December 6, 2001. The appellants argued that the reduced UM/UIM limits stated in the policy were invalid and that UM/UIM coverage arose by operation of law in an amount equivalent to the policy's liability coverage. The insurer argued that under the S.B. No. 97 version of R.C. 3937.18, the reduced UM/UIM limits were valid and precluded recovery. It was undisputed that the most recent policy renewal occurred after the effective date of S.B. No. 97. Nevertheless, the appellants argued that the S.B. No. 97

changes were not incorporated into their policy because appellants were not properly notified of the changes in UM/UIM coverage when the policy renewed. The Twelfth District rejected the appellants' argument for two reasons:

> * * * First, "[a]n insurer has no duty to inform an insured about changes in insurance laws." *Ryan v. The Hartford Co.* (June 25, 2001), Butler App. No. CA2000–10–210[, 2001 WL 705709]. Second, there was no change in the UM/UIM coverage limits of the renewal policy. The Burtons concede that the policy originally issued to them on December 6, 1997 included UM/UIM coverage in the amounts of $25,000 per person and $50,000 per occurrence. These amounts are identical to those declared in the renewal policy that went into effect on December 6, 2001. Thus, notice of a change in UM/UIM coverage was not required.

Id. at ¶ 16.

{¶ 28} Similarly, in *Arn,* the appellants argued that the S.B. No. 97 changes were not incorporated into their policy, under which UM/UIM coverage would have otherwise been imposed by operation of law. There, the renewal certificate issued with the post-S.B. No. 97 renewal informed the insureds that UM/UIM coverage had been declined and instructed the insureds to contact their insurance agent if they wished to purchase UM/UIM coverage. The appellants argued that because their prior rejections of UM/UIM coverage were invalid under the pre-S.B. No. 97 versions of R.C. 3937.18, this was not a sufficient change to the policy. The Second District disagreed, stating:

> * * * In our opinion, prior rejections or coverage imposed by operation of law were irrelevant, because State Farm had no obligation to offer UM coverage and there was no need for either a written offer or a rejection when the policy was renewed in February, 2002. On its face, the policy did not contain UM/UIM coverage and, in fact, had never contained UM/UIM coverage. The only way such coverage might have been in effect previously was through a legal fiction adopted by courts—a fiction that was no longer viable in February 2002. Whether one wants to consider the statement on the renewal certificate a change or simply a return of the policy to what it always was before the many amendments to the UM statutes, the fact is that the insured was clearly informed that the policy did not contain UM/UIM coverage.

*Arn* at ¶ 41.

{¶ 29} Like the policy at issue in *Burton,* the Allstate policy at issue here has always provided in its declarations for reduced UM/UIM coverage limits. Since its inception, the Allstate policy has provided UM/UIM coverage with limits of $50,000 per person/$100,000 per accident. The only way additional UM/UIM coverage might previously have been available to appellant "was through a legal fiction adopted by court—a fiction that was no longer viable." Id. Additional

coverage imposed by operation of law was, by definition, never explicitly included in the Allstate policy. Accordingly, there was no policy provision for Allstate to amend by endorsement. As the *Burton* court noted, an insurer has no duty to inform its insureds about changes in insurance law. Nevertheless, Allstate instructed its insureds to review the UM/UIM coverage expressly listed in their policy declarations and informed them how to make changes to that coverage if desired. Allstate also explicitly informed the Advents that their chosen UM/UIM limits were less than their liability coverage limits. Because the incorporation of the S.B. No. 97 changes to the insurance statutes occasioned no change in the terms of the Allstate policy, Allstate was not required to issue a policy endorsement to incorporate those changes into the policy.

{¶ 30} In support of its position that a policy endorsement was required to make changes to the policy, appellant cites the fact that Allstate issued an endorsement, in addition to a notice, to enlarge the statute of limitations for UM/UIM claims from two to three years. Allstate sent its notice regarding the extension of the statute of limitations at the same time it sent notice regarding the changes to the process for selecting UM/UIM coverage. We find Allstate's issuance of an endorsement changing the statute of limitations irrelevant. The enlargement of the statute of limitations involved a change to the express terms of the Allstate policy, which previously required that "[a]ny legal action against Allstate must have been brought within two years of the date of the accident." Unlike the change to the statute of limitations, application of amended R.C. 3937.18(A) did not involve any change to the terms of the Allstate policy. Rather, it simply validated the expressly stated limits of UM/UIM coverage set forth in the policy declarations, as negotiated by the parties and as appellant understood them to exist.

{¶ 31} For the foregoing reasons, we find that the S.B. No. 97 changes to R.C. 3937.18(A) applied to the Allstate policy at the time of the accident and that the Allstate policy provided UM/UIM coverage in the amounts of $50,000 per person/$100,000 per accident. Consequently, we conclude that the trial court did not err in granting Allstate's motion for summary judgment and denying appellant's motion for partial summary judgment. Therefore, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

BRYANT and TRAVIS, JJ., concur.